Argued and submitted September 10, 1985, reassigned March 4, Court of Appeals
affirmed in part and reversed in part, case remanded to circuit court July 1, 1986

## STATE OF OREGON,
*Petitioner on review,*

*v.*

## JOEL DEAN BENNETT,
*Respondent on review.*

(CC C83-11-35425; CA A31588; SC S31726)

721 P2d 1375

Peterson, C. J., and Jones J., concurred and filed opinions.

Lent, J., dissented and filed opinion in which Linde, J., joined.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the

petition were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Jan Peter Londahl, of Bennett, Londahl & McCandlish, Portland, argued the cause for respondent on review.

JONES, J.

Peterson, C.J., filed a concurring opinion.

Jones, J., filed a concurring opinion.

Lent, J., filed a dissenting opinion joined by Linde, J.

**JONES, J.**

In this case, the state petitions for review from the Court of Appeals decision that affirmed the trial court's pretrial order suppressing physical evidence discovered in a warrantless search of a car trunk. As in *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986), the issue is whether, following the arrest of the defendant after he was stopped in his car, the warrantless search of the passenger compartment and trunk of defendant's car was lawful.

The trial court suppressed all physical evidence discovered during the search of the vehicle. The court thought that our decision in *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983), required suppression because the officers had time to obtain a search warrant. On appeal, the Court of Appeals held that the search of the interior of the passenger compartment of the vehicle was justified as a search incident to arrest and reversed the trial court as to the evidence thus obtained. 72 Or App 733, 692 P2d 213 (1985). The Court of Appeals held, however, that the search of the trunk and its contents exceeded the permissible scope of a search incident to arrest, and affirmed the trial court as to the suppression of the evidence discovered in the trunk. We conclude that the searches of the passenger compartment and the trunk were lawful. Therefore, we affirm in part and reverse in part.

## FACTS

About an hour before defendant's arrest, a confidential, reliable informant told police that three men were trying to sell about ten pounds of marijuana that they had in their car. The informant described the men and their car and said that he had seen the marijuana in the car trunk.

Police stopped a car matching the informant's description. Defendant was driving. As Officer Galloway approached the vehicle, he saw defendant in the driver's seat and asked for his driver's license and the vehicle registration. Through the open window, Galloway smelled the odor of smoked marijuana and the "very powerful odor of cut marijuana." The officer was familiar with those odors after ten years of police experience.

Defendant declined Galloway's request to step out of

the car. When Galloway saw defendant reach down for something with his right hand by the side of the seat, the officer, fearing for his own safety, drew his revolver and ordered defendant out of the car. Galloway escorted defendant to the rear of the car and searched him for weapons. Although he found no weapons on defendant's person, he did feel a bulky object in an upper pocket, which turned out to be a large wad of cash. At Officer Larsen's request, Galloway then handcuffed defendant and placed him in a patrol car.

Officer Larsen opened the passenger door and removed Mr. Beach. From that point forward Larsen smelled the odor of green marijuana. After placing Beach in Galloway's patrol car, Larsen spoke with defendant as they stood at the rear of the stopped vehicle. Larsen told defendant that the police had probable cause to believe that he possessed a large quantity of marijuana. Defendant denied that the car contained marijuana and refused consent to search.

At trial when asked why he did not obtain a warrant prior to the stop of the automobile, Officer Larsen replied:

> "The automobile was mobile. And with it being mobile, I would not be able to determine where that vehicle was at a latter time. That was upon first observing the vehicle. And then upon stopping the vehicle, that it did not seem reasonable at that time."

He estimated that it would have taken about four hours to obtain a written search warrant and at least an hour and one-half to obtain a telephonic one.

Larsen began searching the car on the driver's side, progressed to the back seat, and ultimately searched the trunk. He seized a notebook from the right passenger floorboard. The only closed container in the passenger compartment was a suitcase, and there was some clothing on the back seat. Larsen did not look under the hood, "rip [the car] apart," or search the glove box. Larsen opened the locked trunk of the car with the keys from the ignition. Inside the trunk he found two military-type footlockers, a brown backpack, two knapsacks, a brown briefcase, a military-style green camouflage bag and a grocery bag.

The footlockers were not locked, but the officers could not see inside them. Officers Larsen and Werner

removed the footlockers from the trunk and opened them. Inside were numerous bags of marijuana. Larsen's search of the closed brown backpack revealed $9,650 in cash.

Officer Werner seized a .22 caliber pistol located in a suitcase on the back seat of the vehicle. She opened the green camouflage bag from the trunk and found marijuana in it. The briefcase was opened; it contained money and identification of defendant. Werner also seized a .45 caliber automatic handgun from the grocery bag in the trunk. She recalled smelling marijuana "in its green form" from the time the car door was first opened. Werner testified that the officers "were searching incident to arrest."

## ANALYSIS

The proper sequence in evaluating any contested governmental intrusion is first to analyze it under state law before reaching a federal law claim. If the conduct is lawful under the state constitution, only then need the federal issues be addressed. *See, e.g., State v. Kennedy,* 295 Or 260, 666 P2d 1316 (1983); *Sterling v. Cupp,* 290 Or 611, 614, 625 P2d 123 (1981); *State v. Scharf,* 288 Or 451, 454-55, 605 P2d 690 (1980).

This case is a textbook application of Article I, section 9, of the Oregon Constitution as interpreted in *State v. Brown, supra.* This was a classic valid warrantless search and seizure of a mobile automobile as set forth in *Brown.* The search and seizure did not violate the Oregon Constitution.

Furthermore, the search did not violate the federal constitution. *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982). At first blush, the search of the footlockers appears unlawful under *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed 2d 538 (1977). In that case the United States Supreme Court suppressed evidence that police obtained through a warrantless search of a footlocker in an automobile trunk. To be sure, the case at bar involves the warrantless search of a footlocker in an automobile trunk. But in both *Chadwick* and the subsequent case of *Arkansas v. Sanders,* 442 US 753, 764, 99 S Ct 2586, 61 L Ed 2d 235 (1979), which held that "a warrant generally is required before personal luggage can be searched and that the extent to which the Fourth Amendment applies to containers and other parcels depends not at all upon whether they are seized from

an automobile," probable cause was confined to the container — a footlocker in *Chadwick* and a green suitcase in *Sanders* — and not to the entire vehicle. In each case police officers waited until the container had been placed inside a vehicle and then proceeded to make a warrantless search of the container. The temporary presence of the footlocker and the suitcase in the vehicles was fortuitous and did not relieve the officers of the task of obtaining a warrant for the search. They had that duty before the containers were placed in the vehicles. Here, and in *Ross,* there was no probable cause to search for any particular container within the vehicle. All the officers had probable cause to believe was that ten pounds of marijuana were somewhere in the car. Thus, *Chadwick* and *Sanders* are inapposite.

■ As to the state constitution, *State v. Brown* would uphold the search as constitutionally valid because a magistrate could have authorized the search of the entire vehicle and its contents. *United States v. Ross* would do the same under the federal constitution. Therefore, the trial court improperly suppressed the evidence and the Court of Appeals improperly excluded the evidence seized from the trunk of the automobile.

Because we hold that this search was permissible under Article I, section 9, under the automobile exception to the warrant requirement as set forth in *Brown,* we need not address the constitutionality of ORS 167.247(1)[1] insofar as it can be read to allow such a search absent the stop of a mobile vehicle. In this opinion we do not reach the issue of warrantless searches of unoccupied, parked or immobile vehicles. Another reason for not addressing the validity of this statute is that it was never relied on as a justification for the search in

---

[1] ORS 167.247(1), the portion of the statute which addresses the authority of police officers to search, provides:

"A district attorney or peace officer charged with the enforcement of ORS 167.212 and 167.222, having personal knowledge or reasonable information that controlled substances are being unlawfully transported or possessed in any boat, vehicle or other conveyance, may search the same without warrant and without an affidavit being filed. If controlled substances are found in or upon such conveyance, he may seize them, arrest any person in charge of the conveyance and as soon as possible take the arrested person and the seized controlled substances before any court in the county in which the seizure is made. He shall also, without delay, make and file a complaint for any crime justified by the evidence obtained."

this case and was not cited by the state on appeal. Since the statute was not raised as a ground for validating the search of defendant's automobile in the Court of Appeals or in this court, and because the search was otherwise lawful, we do not now address the statute's constitutionality.

The Court of Appeals is affirmed in part and reversed in part, and the case is remanded to the circuit court.

**PETERSON, C. J.,** concurring.

How many angels can you get on the head of a pin? Looking at the last generation of search and seizure decisions of this and other courts, one wonders if there ever will be certainty in the law of search and seizure.

Shortly before I became a judge, this court decided four search cases: *State v. Groda,* 285 Or 321, 591 P2d 1354 (1979) (officer could not search briefcase removed from automobile trunk); *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979) (search of automobile and trunk upheld because exigent circumstances existed); *State v. Fondren,* 285 Or 361, 591 P2d 1374 (1979) (absent exigent circumstances, warrant needed to search parked car believed to contain marijuana); and *State v. Downes,* 285 Or 369, 591 P2d 1352 (1979) (officer cannot search a closed unlocked trunk found in converted bus absent exigent circumstances). In those opinions we relied upon decisions of the Supreme Court of the United States. Some of those federal decisions since have been overruled.

I wondered in 1979 whether there ever would be order in this area of the law. Events since 1979 convince me that there is no more order and there is less certainty today than then.

Certainty is near the top rung in the hierarchy of law's social values.[1] The law must accommodate changed

---

[1] "* * * In time there comes a logically sound and practically workable principle derived from judicial experience of many causes. In the meantime there has been sacrifice of particular litigants and sacrifice of certainty and order in the law, as decision has fluctuated between regard to the one or to the other of the two sides of a judge's duty." Pound, *The Theory of Judicial Decision,* 36 Harv L Rev 940, 943 (1923).

I do not suggest that certainty exists at the expense of fairness. This is not the occasion for an extended discussion of the role of certainty. On the need for certainty, *see* Jones, *An Invitation to Jurisprudence,* 74 Colum L Rev 1023, 1026-27 (1974).

societal conditions. And it does. But in the field of search and seizure there has been little certainty; rather, increased uncertainty with little change in societal conditions.

The end result of the proliferation of search and seizure decisions has been a body of confusing state and federal decisions, the meaning of which is alike unclear to legal scholars, police officers and the public. The Supreme Court of the United States is as guilty as we. Some of its rules have turned out to have limited life expectancy, as noted in the discussions of recent Supreme Court decisions in the other opinions in this case and the opinions in *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986).

In deciding cases involving stopped automobiles, a variety of defensible rules might be considered, including these (simplified for purpose of illustration):

1.   No search of an automobile or its contents without a warrant.

2.   "Search" of an automobile without a warrant is limited to what is in plain view.

3.   The automobile can be searched without a warrant if exigent circumstances exist and there is probable cause to believe that the automobile contains contraband or evidence of crime.

4.   Only the passenger compartment can be searched without a warrant. A warrant is needed to search the trunk.

5.   The interior and trunk can be searched without a warrant, but a warrant must be obtained to search closed containers.

6.   The interior, trunk and closed containers contained therein can be searched if there is probable cause to believe that contraband or evidence of crime is contained therein.

Notwithstanding the mile upon square mile of trees sacrificed to print search and seizure opinions since 68 bottles of gin and whiskey were discovered in Mr. Carroll's seat cushion in 1921, the conditions concerning the use of automobiles have not changed that much since *Carroll v. United*

*States,* 267 US 132, 45 S Ct 280, 69 L Ed 543, was decided in 1925. It was and is good law.

Justice Stevens, writing for the majority in *United States v. Ross,* 456 US 798, 821, 102 S Ct 2157, 2171, 72 L Ed 2d 572, 591 (1982), referred to "nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks and wrapped packages, in the case of a vehicle." He then referred to these "practical considerations":

"The practical considerations that justify a warrantless search of an automobile continue to apply until the entire search of the automobile and its contents has been completed. Arguably, the entire vehicle itself (including its upholstery) could be searched without a warrant, with all wrapped articles and containers found during that search then taken to a magistrate. But prohibiting police from opening immediately a container in which the object of the search is most likely to be found and instead forcing them first to comb the entire vehicle would actually exacerbate the intrusion on privacy interests. Moreover, until the container itself was opened the police could never be certain that the contraband was not secreted in a yet undiscovered portion of the vehicle; thus in every case in which a container was found, the vehicle would need to be secured while a warrant was obtained. * * *" 456 US at 822 n 28, 102 S Ct at 2171 n 28, 72 L Ed 2d at 591-92 n 28.

Justice Blackmun, concurring in *Ross,* stated:

"My dissents in prior cases have indicated my continuing dissatisfaction and discomfort with the Court's vacillation in what is rightly described as 'this troubled area.' [Citations omitted.]

"I adhere to the views expressed in those dissents. It is important, however, not only for the Court as an institution, but also for law enforcement officials and defendants, that the applicable legal rules be clearly established. Justice Stevens' opinion for the Court now accomplishes much in this respect, and it should clarify a good bit of the confusion that has existed. In order to have an authoritative ruling, I join the Court's opinion and judgment." 456 US at 825, 102 S Ct at 2173, 72 L Ed 2d at 594.

A basic constitutional rule permeates federal and Oregon search and seizure law: If it is possible to get a warrant, get a warrant. The dissents in this case and in *Brown*

argue that the majority decisions here and in *Brown* repeal that rule, insofar as automobiles are concerned.[2] I confess that the result in this case troubles me. Even so, I join the majority because the rule is clear, it is workable and it is consistent with the federal rule.

I aim at putting the question to rest, to the end that everyone will know and understand what is the rule. I therefore join in the opinion of the majority.

**JONES, J.,** concurring.

I write separately to respond to the colorful dissent written by Justice Lent and joined by Justice Linde.

The dissent argues that we have treated the defendant unfairly by deciding the case on a theory not advocated by either party. The key issue in this case in this court, the Court of Appeals and the trial court is whether the trial court must suppress evidence gained through warrantless searches of closed containers that were in the defendant's automobile. We have answered that question unequivocally: no. The fact that the state asserted that the search was justified as "incident to arrest" rather than as a "mobile automobile exception" is irrelevant. The main issue whether the search violated our state constitution was asked and answered. The state and the defendant were entitled to argue any justification or lack of it for the search. We are not bound by their theories. We did not fetter the discussion and no one has been treated unfairly from a procedural standpoint.

The dissent then complains that even judges and lawyers might be subject to warrantless searches of their automobiles. That is certainly true, but only if the police have probable cause to believe that the lawyer or the judge was transporting contraband or crime evidence in the automobile. If police stop and search any citizen's automobile, be it driven by judge or junkman, the police must have probable cause to do so. Although unrelated to the issue of the constitutionality

---

[2]Justice Marshall, dissenting in *United States v. Ross,* 456 US 798, 827, 102 S Ct 2157, 2174, 72 L Ed 2d 572, 595 (1982), stated:

"The majority today not only repeals all realistic limits on warrantless automobile searches, it repeals the Fourth Amendment warrant requirement itself. * * *"

of the search, if the search is not based on probable cause the police have invaded the privacy rights of the citizen and may be sued. This state provides a remedy for damages up to $150,000 under its Tort Claims Act for such unlawful acts. ORS 30.270. In addition, the federal government has provided a right to citizens to recover damages under 42 USC § 1983 if any police officer violates the federal constitutional rights of a citizen. Further, police who conduct unlawful searches and seizures are subject to administrative discipline, and in some cases to criminal prosecution. In short, police cannot conduct warrantless searches willy-nilly. If they do, they will be subject to severe sanctions.

The dissent continues its discussion by condemning the majority for not engaging in loose-lipped *dicta* when it asks how much ground this opinion is meant to cover. The dissent asks us to decide if the search would be lawful if the containers were *not* in the automobile. The opinion deals with containers *in* an automobile. The dissent then asks whether the opinion extends to crime evidence as well as contraband. The answer is found in *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986): The search in *Brown* was for evidence of the crime — to wit, the gun, and in this case for contraband, to wit, the 10 pounds of marijuana.

The dissent's incorporation of "The Incredible Hulk" article may be cute, but trite. Worse, the article is inapposite in that it refers to cars searched incident to arrest, *New York v. Belton*, 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768 (1981), desk drawers in homes and cabin cruisers. I am amazed that the dissent finds this piece of whimsy persuasive.

The dissent concludes with a bit of legal chest-thumping and refers to the oft-quoted words of Justice Jackson with a snide side reference to even more oft-quoted words of Justice Frankfurter. These words from famous jurists can just as well be aligned with the majority opinion because the decision today does protect our citizens; it protects their rights as individuals, while allowing police to protect citizen rights to have our criminal laws enforced. A citizen's rights of privacy are not protected by seizing him or his property and holding the person or property for hours pending the receipt of a warrant issued by a magistrate. Magistrates are judges. Judges are busy at work during the day and often difficult to reach at

night. No one disputes that the containers could be seized and that the owner is deprived of that property until a warrant can be obtained. Also, no one disputes that it takes substantial time to obtain a warrant.

As the Chief Justice notes in his concurring opinion, our laws on the subject of search and seizure have been complex and confusing. It is no answer to say that all of these problems can be solved at the scene if the person involved gives consent. Anyone who has been involved in the practicalities of law enforcement knows that many of those on-scene consents become in-court denials. Further, the law of consent has not produced a legal bed of roses. Many thorny issues surround that procedure. *See, e.g., State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971); *see generally* 1 LaFave & Israel, Criminal Procedure 340-59, § 3.10 (1984). Police should not have to rely on a reversible consent to justify a car search. In fact, police can refuse consent and insist that the citizen wait for a warrant.

I envision a day when modern electronic techniques will provide the best of both worlds — warrants and immediate searches and seizures, but until then the decision in this case and in *Brown* will provide bright-line guidance for police and with less intrusion on the citizen privacy rights than our present outmoded, awkward warrant system provides.

**LENT, J.,** dissenting.

The majority regards this case as a mere "trailer" to *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986). To do so violates the basic rules concerning matters that can be considered on appeal and review and is, therefore, unfair to this particular defendant. In addition, I cannot agree with the majority concerning the search of the trunk for the reasons expressed in the dissent in *State v. Brown, supra,* and the search of the containers found in the trunk for the reasons later addressed herein.

I address first the appellate posture of this case. Relying on both Article I, section 9, of the Oregon Constitution and the Fourth and Fourteenth Amendments to the Constitution of the United States, defendant moved in the

trial court to suppress the evidence gained through warrantless searches of the closed containers that were in the automobile, contending:

> "(1) There was no warrant issued for this search or seizure, (2) There was no consent for this search or seizure, (3) This search or seizure was not lawfully incident to any lawful preceding arrest, (4) This search or seizure was not otherwise lawful, and (5) The arrest of the defendant was unlawful."

The first two bases were not contested by the state, and the trial court found there was no warrant and no consent to search. The trial judge went on to find that there was no evidence even offered of either an "emergency or condition that would endanger the evidence while a search warrant was obtained" and further found as a historical fact that there was time to get a warrant.[1] That finding is binding on the appellate courts under *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968), and the many cases decided since applying the rule of *Ball.*

The trial court held that all of the evidence obtained by the search of the automobile should be suppressed.

Pursuant to ORS 138.060(3), the state appealed and in its brief to the Court of Appeals stated the question presented on appeal:

> "Was the search of defendant's car and the opening of closed containers therein lawful as a search incident to arrest under Article I, section 9, of the Oregon Constitution?"[2]

In the brief the state also conceded that there was then no "automobile exception" under the Oregon Constitution unless an individual case "fits under a particular showing of exigent circumstances." The state then asserted that the lawfulness of this search "must be examined solely pursuant to the rule of search incident to arrest." The defendant was not required to, and did not, argue about an "automobile exception" under the Oregon Constitution.

When the Court of Appeals affirmed the trial court as to the search of the trunk, the state petitioned this court for

---

[1] The state conceded in the trial court and in the Court of Appeals that there was no "exigency."

[2] One of the officers who participated in the search testified that the officers "were searching incident to arrest."

review, contending that the search of the trunk and the containers therein "was a lawful search incident to arrest" under the Oregon Constitution. The state asserted:

"Under Article I, section 9, of the Oregon Constitution, the case is a textbook application of the search-incident-to-arrest rule as set forth in *State v Caraher.*"

The state concluded its petition for review as follows:

"This case also presents a rare situation in which a search can be justified under both the state and the federal constitution, but under different exceptions to the warrant requirement. In the area of car trunk searches, Oregon's *Krogness* rule apparently is more permissive than the federal rule in terms of search incident to arrest. But the search is nonetheless lawful under the federal automobile exception of *United States v. Ross, supra.* The employment of different exceptions under different constitutions to achieve the same result is a practice deserving of attention by Oregon's highest court."

After allowing review, this court addressed questions to counsel. On their face they addressed searches incident to arrest, and counsel for both parties so understood them, to judge from their respective answers. *Several months after oral argument* in this court, we again addressed questions to counsel about the application and effect of ORS 167.247, but there is no hint in those questions that we might decide this case on the basis of an "automobile exception" under the Oregon Constitution.

To now decide this case on a basis never presented by the state on appeal or review and never presented by this court to defendant for argument is patently unfair.

I suppose that the majority might answer that the rule of law that applies to automobile searches has been hovering out there somewhere as a truth independent of man's thought and has been discovered, rather than invented, by this court in *Brown.* That is, it is something that existed and could not be affected by argument. The Supreme Court of the United States apparently is not so sure. In *Robbins v. California,* 453 US 420, 101 S Ct 2841, 69 L Ed 2d 744 (1981), that court, on the arguments presented by counsel *in that case,* held that the opening of closed containers without a search warrant during lawful search of an automobile violated the Fourth and Fourteenth Amendment rights of the defendant. On different

argument by different counsel, that court, less than a year later, overruled that holding of *Robbins* in *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982). How would this court's majority have decided on the issue of the closed container in the automobile had this case been presented in the interim? Should not this court at least listen to *this* defendant's argument before applying the rule "newly discovered" in *Brown?*

The majority, with respect to the search of the closed containers (other than the trunk), distinguishes *United States v. Chadwick,* 433 US 1, 97 S Ct 2476, 53 L Ed 2d 538 (1977), and *Arkansas v. Sanders,* 442 US 753, 99 S Ct 2586, 61 L Ed 2d 235 (1979), on the ground that there probable cause was confined to the container rather than the entire vehicle in which the containers were seized. This differs from the case at bar and *Ross,* says the majority, because in these cases there was no probable cause to search any particular container. I am simply unable to discern any principled reason that leads to a rule that if an officer has probable cause to believe that a footlocker or suitcase in a car contains contraband, he cannot search those containers without a warrant, but if he only has probable cause to believe that contraband is somewhere in a car, he can search a footlocker or suitcase without probable cause to believe that the particular container contains contraband.

Underlying the federal decisions on vehicle searches is an asserted "reduced expectation of privacy" one has in his automobile. Although this may be argued as to those parts of the auto that are open to view by the most casual passerby, it is just not true as to the locked trunk of the auto. All of us move in our autos effects that are most private, and when we do so we are more apt to put them in the trunk than in some other part of the vehicle. A subset of "all of us," i.e., judges and lawyers, often carry highly confidential papers in our autos, and if we are careful (as we ought to be) we probably lock them in the trunk.

> "Despite the wealth of language that privacy in automobiles is less important than in other areas, most members of our society must frequently use automobiles to convey undeniably private papers and effects. For example, the workload of this court often requires judges to take their work home. The automobile provides the usual mode for transporting drafts of

opinions, notations indicating the probable outcome of sub-
mitted cases, and confidential messages from other judges. To
say that there is no expectation of privacy in such papers,
release of which would constitute a dereliction of duty, would
be to ignore reality. And judges are of course not alone in this
regard."

*United States v. Edwards,* 554 F2d 1331, 1338 (5th Cir 1977).

I am not sure just how much the majority in *Brown*
and in this case mean to cover. Would the very containers
searched without warrant in this case have been constitu-
tionally impervious to warrantless search if they were not in
an automobile, even if the officers had probable cause to
believe that they contained contraband and had therefore
seized them? Do the majority opinions in these cases allow the
police to open and search other closed containers in an auto
after the police have found the object of the search? Do the
majority opinions extend to search for evidence of crime that
is not itself contraband?[3]

The majority relies on the persuasiveness of the
reasoning of the Supreme Court of the United States in
construing the Oregon Constitution. In cases such as *New
York v. Belton,* 453 US 454, 101 S Ct 2860, 69 L Ed 2d 768
(1981), and *United States v. Ross, supra,* that court and, in
these cases, the majority of this court strive for a bright line to
guide the police officer in the field. Bright lines may not
always be helpful. One critic has written:

### "CONCLUSION: THE INCREDIBLE HULK
### ATTENDS THE POLICE ACADEMY

"It is possible to view bright line fourth amendment rules
simply as political gimmicks. Both activist hawks and activist
doves, when they have the upper hand, may be tempted to
play for higher stakes than the appropriate resolution of a

---

[3] In *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925), the case
described as "seminal" by the majority in *State v. Brown,* 301 Or 268, 721 P2d 1357
(1986), the court said that the leading case on the subject of search and seizure was
*Boyd v. United States,* 116 US 616, 6 S Ct 524, 29 L Ed 746 (1886). In *Boyd* the court
distinguished what the government constitutionally might do in searching for and
seizing contraband and what it constitutionally might do with respect to obtaining
evidence to convict which was not itself contraband. *Carroll* approves of the *Boyd*
decision and quotes extensively therefrom. *Carroll* also made it very clear that there
were limits to the search of a mobile vehicle, saying that where securing a warrant is
"reasonably practical, it must be used." 267 US at 156.

case. If the Supreme Court's assertion of the need for bright line rules is taken at face value, however, the Court seems to regard law enforcement officers as incapable of case-by-case judgment. Perhaps, after this lengthy attempt at responsible scholarship, you are ready for an attempt at irresponsible whimsy. I therefore present to you the highest ranking graduate of the police academy class of 1990. He is green and muscular; his name is Officer Gazenga; and these are his words:

"Gazenga is a good officer. He has memorized all 437 Supreme Court bright line rules for search and seizure. For example, Gazenga has made a lawful arrest in a car. Gazenga rip that car apart! But Gazenga never touch trunk of car unless there is probable cause, for Gazenga has read footnote 4 of *Belton* opinion.

"Now Gazenga has made a lawful arrest in a house. Different bright line rule apply to a house. Gazenga may search glove compartment of car when suspect far away, but may not search desk drawer in living room unless suspect right there. Why? Supreme Court say so. Gazenga just a cop.

"Gazenga now has made lawful arrest in cabin cruiser. Oh no! Supreme Court forgot to give Gazenga bright line rule for cabin cruiser! What is poor Gazenga to do?

"Of course, this picture of Officer Gazenga's lessons at the police academy is overdrawn, and so is the following depiction of another lesson that might be taught at the police academy of 1990 — a lesson that would teach most of what an officer would need to know about the fourth amendment in about sixty seconds:

"Ladies and gentlemen, the fourth amendment forbids unreasonable searches and seizures. It requires you to have a strong and persuasive reason before you make a search, seizure or arrest. I emphasize that your reason for invading someone's privacy must be a reason that another person is likely to find persuasive, for very frequently you will not be the final judge of your actions. A court that passes on these actions ought to recognize the difficulty of the situation that confronted you, but it cannot credit whims, hunches or insubstantial reasons. What is more, you are expected to take your reasons to a judge before making a search or seizure whenever you can. You must do this by filing a sworn written statement that describes the relevant facts in detail and by asking the judge to issue a search or arrest

warrant. Of course there may be situations in which you believe that you have a persuasive reason for a search or seizure and a judge disagrees. Basically, however, if you act in a decent manner, respect the other person's privacy and seek a warrant whenever you can, your actions will not violate the fourth amendment."

Alschuler, *Bright Line Fever and the Fourth Amendment,* 45 U of Pitt L Rev 227, 285-86 (1984).

In another article, which I find to be persuasive, Professor Grano takes the position that the impracticality of obtaining a search warrant should be the only justification for "excusing" warrantless searches. Grano, *Rethinking the Fourth Amendment Warrant Requirement,* 19 Am Crim L Rev 603 (1982). At page 650 he concludes:

"In summary, the approach articulated in this article for bringing coherence to the warrant branch of fourth amendment law results in two propositions: (1) plain view *seizures* based upon probable cause are always permissible, with or without a warrant; (2) warrantless *searches* are never permissible if the evidence can be preserved by a seizure, unless for some other reason a delay to obtain a warrant would threaten life, safety, or legitimate law enforcement interest. Unlike the rules that now govern warrant law, these propositions do not depend upon a convoluted analysis seeking to distinguish the indistinguishable. Moreover, they can easily be taught to judges, lawyers, law students and, perhaps most importantly, to police officers. Finally, as I have tried to demonstrate, these propositions support rather than disparage the values reflected in the fourth amendment warrant clause." (Footnote omitted.)

I find the reasoning of Professor Grano more persuasive than that of the Supreme Court of the United States as it zigzags from one decision to another. I would interpret the Oregon Constitution to reflect that view. I would not have to change the meaning of the Oregon Constitution the next time the higher court changes its mind about a rule that it espouses concerning the Fourth Amendment.[4]

---

[4]The majority's path would have resulted in the Oregon Constitution being given a meaning by the decision of the Supreme Court of the United States in *Robbins v. California,* 453 US 420, 101 S Ct 2841, 69 L Ed 2d 744 (1981), and being amended in less than a year, without vote of the people of Oregon, by the decision in *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982).

In this case it was not impractical to obtain a warrant before searching the containers after they were seized. The trial judge so found as a historical fact that is binding on the appellate courts. I would hold that after the automobile and its contents were seized the police had to obtain warrants to open and search the closed containers in the automobile. I would therefore affirm the ruling of the trial court.

I am well aware that my brethren are tired of hearing me express my fears concerning the direction judicial decisions are taking us. The right of all persons subject to our federal and state constitutions to be free of unlawful intrusion by way of police search and seizure has been a primary concern of those adopting the various constitutions, as the inclusion therein of provisions similar to the Fourth Amendment and Article I, section 9, of the Oregon Constitution will attest. Because of the widespread trafficking of illegal drugs and the praiseworthy efforts of our people to prevent or punish that trafficking, however, the courts are making decisions that threaten the rights guaranteed to all of us. The price is too high. I do not want to live in a state where the police, for the purpose of the war on drugs or any other criminal activity, may commit acts forbidden by our constitution.

The police could undoubtedly catch criminals more easily were it not for the restrictions imposed by our fundamental law. I daresay that the task of the police in the U.S.S.R. and many other countries around the world is easier than that of our police. The constitutional restrictions on our police are the price we pay for assuming (I was going to say knowing) that we shall be secure in our persons, houses, papers and effects against unlawful conduct by the police. As Justice Jackson said in dissent in *Brinegar v. United States,* 338 US 160, 69 S Ct 1302, 1313, 93 L Ed 1879 (1949):

"[Fourth amendment rights] are not mere second-class rights but belong in the catalog of indispensable freedoms. Among deprivations of rights, none is so effective in cowing a population, crushing the spirit of the individual and putting terror in every heart. Uncontrolled search and seizure is one of the most effective weapons in the arsenal of every arbitrary government. * * *

"But the right to be secure against searches and seizures is one of the most difficult to protect. Since the officers are

themselves the chief invaders, there is no enforcement outside of court."[5]

Article I, section 9, of the Oregon Constitution does not say that our people shall "be secure in their persons, houses, papers, and effects EXCEPT THEIR AUTOMOBILES AND CONTAINERS THEREIN." If it did, today's decisions would be correct. As it is, these decisions are not correct.

Linde, J., joins in this dissenting opinion.

---

[5]The dissent of Justice Frankfurter (joined by Justice Jackson) in *United States v. Rabinowitz,* 339 US 56, 68, 70 S Ct 430, 94 L Ed 653 (1950), is more eloquent but too long to justify quotation in this losing opinion. It was quoted in defendant's written response to this court's questions, but the eloquence and logic appear wasted on those impatient of the constitutional obstacles to police "efficiency."