Argued and submitted December 20, 1991, affirmed October 21, 1992, reconsideration denied January 13, petition for review denied February 23, 1993

(315 Or 443)

# STATE OF OREGON,
*Respondent,*

*v.*

# ORAPUN BOUNDY,
*Appellant.*

(CM 90-0427; CA A68946)

840 P2d 1307

Jad Lemhouse, Brownsville, argued the cause and filed the briefs for appellant.

Ann Kelley, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

DEITS, J.

Durham, J., dissenting.

**DEITS, J.**

Defendant appeals her conviction for possession of a controlled substance. ORS 475.992(4). She assigns error to the trial court's denial of her motion to suppress evidence found in her purse. We affirm.

On May 29, 1990, Corvallis police stopped a car driven by John Boundy, in which defendant was a passenger. Deputy Sheriff Hall was participating in a 15-month investigation of John for drug trafficking and, while following him that evening, had seen him participate in what Hall believed to be a drug transaction in a Salem area shopping mall parking lot. He contacted the Corvallis police and requested that they stop John's car and search him.

Hall had seen John pull into the shopping mall and park his car in the middle of the parking lot. The store appeared to be closed, and there were very few cars in the lot. Hall had noticed a passenger, but could not identify the person. John got out of his car and walked to some pay phones located in front of some smaller stores in the mall. He returned to his car and got in. A few minutes later, another man walked over from the pay phones to the car and got in on the passenger side. He got out minutes later and walked over to a red car parked in the lot. He reached through the car window, walked back to the pay phones, then back to John's car. At that time, both men left the car and went to the pay phones. They both appeared to be talking on the phone. The man then left in the red car. John also drove away, eventually heading south on I-5 until he reached the Albany exit. At Hall's request, the car was stopped by other officers in Corvallis. John and defendant were arrested and searched. The police discovered cocaine on John and a rolled up dollar bill with traces of cocaine on it in defendant's purse.

Both defendant and John filed motions to suppress. At the consolidated hearing, they argued that the arrest and search were unlawful, because the police lacked probable cause to believe that John had committed a crime and that the vehicle contained evidence of a crime. The trial court concluded that Hall had probable cause to believe that John had "received a quantity of drugs" during his meeting in the Salem parking lot and denied both motions to suppress.

■  Defendant assigns error to the denial of her motion to suppress. She acknowledges that, under the "automobile exception," *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986), if the police had probable cause to believe that the car in which she was riding contained evidence of a crime, it would have been permissible to search it and its contents when it was stopped by the police in Corvallis.[1] For probable cause, there must be a substantial objective basis to believe that, more likely than not, a crime has been committed and that evidence of the crime will be found in the automobile. *State v. Brown, supra*, 301 Or at 275. In deciding if there was probable cause, we examine the totality of the circumstances, including the officer's training and experience. *See State v. Cole/Hood*, 87 Or App 93, 741 P2d 525, *rev den* 304 Or 280 (1987).

■  If we could consider only Hall's observations on May 29, there may not have been probable cause to support the search. However, considering Hall's specialized training and knowledge and the information obtained from his 15-month investigation, together with his observations, we conclude that there was probable cause to believe that a crime had been committed and that there was evidence of the crime in the car.

During the 15-month investigation, Hall learned from a confidential informant that there was a Corvallis drug dealer called "John," who drove a car fitting the description of John's. The informant told Hall that the drugs were obtained in Salem, with the transactions occurring in public places such as parking lots. Hall knew that John's criminal record included a number of arrests and convictions for possession and delivery of controlled substances. As part of his investigation, Hall had arranged for undercover narcotics purchases through two informants, Cole and Smith. Cole participated in a controlled purchase of narcotics from a man named "John," who lived in a multi-unit complex. Hall

---

[1] The dissent wants to address the additional issue of whether, as part of the stop of the Boundy vehicle, it was permissible to search defendant or her purse. However, defendant does not make the argument on appeal in either of the two briefs that she filed. In her first brief, she argues that the police lacked probable cause to stop and search the car. In the second brief, she makes no argument that she could not be searched as part of the search of the car. Rather, she argues that the officers who seized the dollar bill from her purse were required to articulate facts that demonstrated probable cause to believe that the bill was contraband or evidence of a crime and that they did not do so.

discovered that the Boundys lived in one of the units in the complex and saw John's car parked in front of the building. Smith participated in two controlled buys with Hall. During the second buy, Hall and the informant met John in a bar, where the informant took money from Hall, left the bar with John, returned with the drugs and asked for more money, returned to John, then returned to Hall.

Defendant argues that the information from Hall's informants may not be used to support probable cause, because they were not reliable. However, in determining that Hall had probable cause, the trial court recognized that the information from the confidential informant was not reliable and should be given little weight. In addition, Hall obtained most of the same information from his other informants.

Defendant contends that the information from Cole was not reliable, because no one actually saw any transaction between John and Cole. Nevertheless, the circumstances support Hall's inference that the drug transaction involved John. *See State v. Luttrell*, 58 Or App 306, 648 P2d 383 (1982). Moreover, Hall's controlled buys with Smith substantially corroborate the information from Cole and thereby demonstrate the reliability of both informants. *See State v. Souders/Brissett*, 74 Or App 123, 700 P2d 1050, *rev den* 300 Or 112 (1985). Considering the totality of the circumstances, we conclude that Hall reasonably believed that it was more likely than not that John's meeting in the mall parking lot was a drug transaction and that there would be evidence of that transaction in the car at the time of the stop. Accordingly, the search of the vehicle and its contents was permissible under the "automobile exception."

■ Defendant also argues that, even if the police could lawfully stop and search the car, there was no probable cause to support the seizure of the dollar bill from her purse. However, at the consolidated hearing on the motions to suppress, no specific argument was made concerning the seizure of the bill. Because it was not argued below, the trial court did not make findings relating to its seizure, nor is there evidence in the record concerning it. We will not address that issue, because it was not preserved.

Affirmed.

**DURHAM, J.,** dissenting.

Defendant was prosecuted for possessing cocaine that was found on the end of a dollar bill seized from her purse. She was a passenger in John Boundy's car when the police stopped it. She got out of the car, with her purse, at the direction of an officer. The officer searched the purse and seized the bill. The majority decides that the police had probable cause to stop the car and, on that basis, sustains the search and seizure. Asserting that she never presented the arguments on appeal, it refuses to address her separate arguments that the police had no probable cause to search the purse and to seize the bill. I disagree and conclude that her arguments are correct. Therefore, I dissent.

Defendant filed a motion to suppress:

"[Defendant] moves the court for an order to suppress all evidence *seized from the defendant's* vehicle and *person* on or about May 29, 1990, *as a result of a warrantless stop, arrest and seizure * * *.* Defendant further requests the court for an order *suppressing all derivative evidence* and statements of defendant which were a product of the illegal searches and seizures * * *." (Emphasis supplied.)

The motion was accompanied by an affidavit of defendant's counsel:

"Prior to Officer Holcomb's stops of defendants, Mrs. Boundy was a passenger, Officer Hall called Officer Holcomb and advised him that *he had probable cause to arrest Mr. Boundy* for 'possession of controlled substances * * *.'

"Pursuant to Officer Hall's request, *both defendants* were searched by other officers at the scene of the traffic stop. Both, at Officer Hall's request, were immediately placed under arrest for being in possession of controlled substances and searched. *Objects were seized.*

"* * * * *

"At no time have the defendants given authorities permission to search then [*sic*] persons or property." (Emphasis supplied.)

The motion was also accompanied by a memorandum of law:

"This traffic stop would not by itself justify an arrest or search of the defendants or their vehicle * * *.

"*\* \* \* \* \*

"Officer Hall alleges in his search warrant affidavit that prior to arresting the defendants, he knew John Boundy had delivered controlled substances. *He makes no mention of Orapun Boundy* \* \* \*.

"*\* \* \* \* \*

"*Items in opaque contaniners [sic] such as purses* not searched or seized incident to a lawful arrest *should be suppressed* \* \* \*.

"*\* \* \* \* \*

"*Search of Defendant Orapun Boundy's Purse.*

"*The search of the person and purse of Orapun Boundy was illegal because Office Hall had no reason to believe she possessed or delivered controlled substances.* He had no basis for arresting her for the same reason. *He had not seen her engaged in any illegal activity.* \* \* \* In searching for weapons, once a purse in [*sic*] seized, it no longer prevents [*sic*] an immediate threat and the officer cannot search it without probable cause to believe it contains evidence of a crime." (Emphasis supplied.)

The state filed a memorandum defending its search of defendant's purse:

"After stopping the vehicle, searching John Boundy and finding controlled substances, *the police searched Orapun Boundy and her purse.* Based on the totality of the circumstances, *the police had probable cause to believe that Orapun Boundy was involved in illegal drug activity and that evidence of such activity would be located* on her person and/or *in her personal belongings, particularly her purse.* \* \* \* The *search, seizure* and arrest of Orapun Boundy *was lawful.*" (Emphasis supplied.)

That establishes that the state was aware that the motion to suppress challenged the search of the purse and the seizure of evidence from it.

Those record excerpts demonstrate that defendant challenged the search of her person and specifically argued that the search of her purse was unlawful, because the officer had no reason to believe she had possessed or delivered a controlled substance. The state litigated that issue, at least in its memorandum. For that reason, I cannot join in the majority's conclusion that,

"at the consolidated hearing on the motions to suppress, no specific argument was made concerning the seizure of the bill. Because it was not argued below, the trial court did not make findings relating to its seizure, nor is there evidence in the record concerning it. We will not address that issue, because it was not preserved." 115 Or App 642.

The record of the suppression hearing demonstrates that the parties focused their attention on whether probable cause existed to stop the car. After the hearing, the trial court issued an opinion that said:

"The State did not establish what occurred during the search; although that would have been helpful to the Court, it was not necessary to justify the arrest and search."

That demonstrates that the reason the record lacks extensive evidence about the search is that the state intentionally or inadvertently did not present it. Defendant challenged the search of her purse and the seizure of evidence from it, *and she had no burden to prove anything at the hearing*. She cannot be faulted because the state put on little evidence to support the search or the seizure and the court concluded that more evidence about that was unnecessary.

Because defendant challenged the search and the seizure, I would address her assignment of error that "[t]he trial court erred in failing to suppress evidence illegally seized from Defendant's purse." Her brief includes the following arguments in support of the assignment:

"Assuming, *arguendo*, that Deputy Hall had probable cause to stop and search the Boundy vehicle, that probable cause did not extend to the *seizure* of a one-dollar bill from Defendant's purse. The seizure of the one-dollar bill from Defendant's purse without any facts on the record to support probable cause to believe that the one-dollar bill was evidence of a crime was an illegal seizure. The trial court's failure to suppress this evidence was error.

"* * * * *

"B.   *The Seizure of Evidence From Defendant's Purse Was Not Supported By Probable Cause.*

"* * * * *

"All the facts supporting probable cause to which Deputy Hall testified flow to John Boundy, the driver of the car, not the Defendant, the passenger in the car.

"Nowhere in the record are there any facts which support probable cause to *seize* anything from Defendant.

"The trial court enumerated specific findings of fact supporting its conclusion of law that Deputy Hall had probable cause to stop and search John Boundy and the Boundy car. Let Op 3-4. None of these findings of fact supports a conclusion that anyone had probable cause to *seize* a one-dollar bill from Defendant's purse.

"* * * * *

"The search of Defendant's purse and the seizure and examination of its contents amounted to nothing less than an 'exploratory seizure' which has been consistently denounced by the Supreme Court * * *.

"The warrantless seizure of a dollar bill from Defendant's purse was illegal. The trial court's failure to supress this evidence was error." (Emphasis in original.)

The majority refuses to address the lawfulness of the search of the purse, stating: "[S]he makes no argument that she could not be searched as a part of the search of the car." 115 Or App at 641 n 1. However her brief clearly argues that the police had no legal basis for searching her purse and seizing the bill. I cannot join in the majority's refusal to address that issue.

*State v. Brown*, 301 Or 268, 721 P2d 1357 (1986), and *State v. Bennett*, 301 Or 299, 721 P2d 1375 (1986), establish that, under Article I, section 9, a mobile vehicle creates a *per se* exigency that, together with probable cause, allow the police to stop it and search it. However, the search of an automobile that has been lawfully stopped must also be reasonable. *See generally* 3 La Fave, *Search and Seizure* 41-45, § 7.2(c) (2d ed 1987). In *State v. Brown, supra*, the court held that the scope of a reasonable automobile search is defined by

" 'the object of the search and the places in which there is probable cause to believe that it may be found.' " 301 Or at 279, *quoting United States v. Ross*, 456 US 798, 824, 102 S Ct 2157, 72 L Ed 2d 572 (1982).[1]

---

[1] *Brown* was decided under Article I, section 9, of the Oregon Constitution. The court cited *Ross* and other federal cases only because it found them persuasive. 301 Or at 274. However, it also concluded that the search and seizure were permissible under the Fourth Amendment. 301 Or at 279.

The police had been told that the defendant, who was driving the car, carried a gun in a "black purse" on his person or in the trunk of the car. 301 Or at 270. The police stopped the car, arrested the defendant, opened the truck and found a black purse. The court concluded that they had probable cause to search and to seize the gun. 301 Or at 279. Similarly, in *State v. Bennett, supra,* the police had been told that three men were trying to sell 10 pounds of marijuana from their car. They stopped the car and smelled the odor of cut marijuana emanating from it. The police had no idea where the marijuana was. They arrested the defendant, the driver and a passenger. They search the closed containers in the passenger compartment and in the truck, and found guns, money and marijuana.

*Brown* and *Bennett* are consistent with other Oregon cases that hold that the police may search areas of a car that they have probable cause to believe may contain contraband or evidence of a crime.[2] In *State v. Taylor,* 62 Or App 586, 661 P2d 569, *rev den* 295 Or 297 (1983), the police were told that a man was selling cocaine from a parked car and that two other men were in it when the sales were made. The police approached the car, arrested the driver and discovered, after searching him, that he possessed drugs. The defendant was a passenger in the car. He was ordered from it and frisked. We upheld the stop and frisk of him, because the police had a reasonable suspicion that he had committed a crime. 62 Or App at 590. We noted, however, that

"mere presence in a car where a crime is known to have been committed may not in itself constitute *probable cause* to arrest or to search a person incident to a justifiable search of the car, *United States v. Di Re,* 332 US 581, 68 S Ct 222, 92 L Ed 210 (1948) * * *." 62 Or App at 590. (Emphasis in original.)

The United States Supreme Court has held, under the Fourth Amendment, that a passenger in a car may not be

[2] We have recognized an analogous rule in the context of the search of a car incident to the driver's arrest. In *State v. Ali,* 105 Or App 193, 803 P2d 1231 (1991), the defendant was a passenger in a car that was stopped for a traffic violation. During the stop, the police developed probable cause to arrest the driver for an open container violation. One officer saw the defendant, a passenger in the back seat, place a paper wad under the front seat. We determined that, under *Brown* and Article I, section 9, there were exigent circumstances to support the seizure of the paper wad, but we held that there was no probable cause to seize it. 105 Or App at 197.

searched during a warrantless search of the car, even though the passenger *could have* concealed the items that the police had probable cause to search for. *United States v. Di Re, supra,* 332 US at 587. The Court said:

> "The Government says it would not contend that, armed with a search warrant for a residence only, it could search all persons found in it. But an occupant of a house could be used to conceal this contraband on his person quite as readily as can an occupant of a car. Necessity, an argument advanced in support of this search, would seem as strong a reason for searching guests of a house for which a search warrant had issued as for search of guests in a car for which none had been issued. By a parity of reasoning with that on which the Government disclaims the right to search occupants of a house, we suppose the Government would not contend that if it had a valid search warrant for the car only it could search the occupants as an incident to its execution. How then could we say that the right to search a car without a warrant confers greater latitude to search occupants than a search by warrant would permit?

> "We see no ground for expanding the ruling in the *Carroll* [*et al v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925),] case to justify this arrest and search as incident to the search of a car. We are not convinced that a person, by mere presence in a suspected car, loses immunities from search of his person to which he would otherwise be entitled." 332 US at 587.

The state cites *State v. Fix,* 83 Or App 107, 730 P2d 601 (1986), as authority that the police may search the "entire automobile,"[3] including a passenger and her belongings, as long as they have probable cause to stop the car. The police had been told that two men, armed with pistols, had threatened another man before escaping in a pickup truck with two women. The police stopped the pickup and arrested all of the occupants. They searched the cab and discovered a pistol on the dashboard. They then searched the purse of the

---

[3] In *State v. Brown, supra,* the court said that the police may search "the entire automobile for the object of the search." 301 Or at 277. That phrase is *dictum* in the light of its holding that an automobile search must nonetheless be reasonable and that the permissible scope of the search is defined by " 'the object of the search and the places in which there is probable cause to believe that it may be found.' " 301 Or at 279, *quoting United States v. Ross,* 456 US at 593. I would not interpret the phrase to vitiate the requirement that the police must have probable cause to search certain areas or containers.

defendant and discovered the other pistol. We upheld the search:

> "The officers had probable cause to believe that the two male passengers had committed a crime and that evidence of that crime (the guns) would be in the truck. Defendant's purse was large enough to contain a gun. The search was lawful." 83 Or App at 111.

Although the defendant had had no apparent role in the crime, the police had probable cause to believe that her purse contained evidence of it. They had been told that the two men had each pointed a gun. They had found only one gun, a semi-automatic. However, they had also found a .38 special cartridge in the pocket of one of the men. They had probable cause to believe that a .38 special remained somewhere in the pickup. The purse was a closed container large enough to contain the other gun. Probable cause *was* at the heart of the search of the purse in *Fix*.

Moreover, the facts in *State v. Brown, supra,* and *State v. Bennett, supra,* are distinguishable from this case. In *Brown*, one person was in the car, and the police had probable cause to search his purse. 301 Or at 279. In *Bennett*, two people were in the car. The police had probable cause to arrest the passenger, because they had been told that he was involved in a crime and they had smelled the odor of marijuana around him. 301 Or at 301. They had probable cause to search all containers in the passenger compartment, because the "very powerful odor of cut marijuana" emanated from it. Moreover, the only closed container in the passenger compartment was a suitcase on the back seat, and no one had a demonstrated privacy interest in it.

Here, the police had no probable cause to arrest or search defendant or to search her purse. Before the stop, Hall knew only that John Boundy had a passenger in the car. He never saw any of defendant's actions and did not recognize her until the stop. There was no evidence that the investigation of John had had anything to do with defendant. The only fact that possibly linked defendant to John was that she was in the car and that Hall recognized her from a Drug Enforcement Agency file photo and from having seen her previously with John. There are no other specific articulated facts in the record to support probable cause to arrest or search her. *See*

*State v. Valdez*, 277 Or 621, 628, 561 P2d 1006 (1977). Her presence in the car alone could not establish probable cause. *See State v. Taylor, supra*, 62 Or App at 590. The police had no right to search her purse, because they had no probable cause to arrest her or to believe that her purse contained contraband.

The search of defendant's purse also cannot be justified as a search incident to the arrest of John. *See State v. Owens*, 302 Or 196, 202, 729 P2d 524 (1986).

The trial court should have suppressed the evidence seized from defendant's purse. Because the majority reaches a contrary conclusion, I dissent.