Argued and submitted September 3, reversed and remanded September 30, 1986

## STATE OF OREGON,
*Respondent on review,*

*v.*

## JOSEPH DEAN KOCK,
*Petitioner on review.*

(CC 84-03-3411-C; CA A31589; SC S32171)

725 P2d 1285

Thomas J. Crabtree, of Crabtree & Rahmsdorff, Bend,

argued the cause and filed the petition for petitioner on review.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response to the petition were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

## JONES, J.

Defendant petitions this court to reverse his conviction for theft of a package of diapers from his employer's store, claiming that the Court of Appeals erred when it upheld the trial court's denial of his motion to suppress crime evidence seized from his automobile. He asserted that the police lacked probable cause and exigent circumstances to conduct a warrantless search of his car or to seize the package, that they lacked probable cause to arrest him and that the search of his car and seizure of the package were not reasonably incident to a valid arrest. The Court of Appeals held that the search of the car and seizure of the package were incident to a valid arrest.

In defendant's petition for review to this court he claimed that the warrantless search of his automobile and the seizure of the package were unlawful and not justified as a search and seizure incident to his arrest. We allowed review to decide whether the warrantless search of the vehicle and the seizure of the package violated Article I, section 9, of the Oregon Constitution.

The historical facts as set forth by the trial court and the Court of Appeals are not disputed: Commencing at about 3:30 a.m. on February 8, 1984, two police officers watched the parking lot and entry area of the store where defendant worked. They were in a police van parked in the lot, 20 to 25 feet from where defendant's car was parked. The store manager had told the police before the surveillance that defendant did not have permission to take merchandise from the store.

Defendant normally worked in the store between 4 a.m. and 6:30 a.m., during which hours it was not open for business. The officers saw him come to work and enter the store between 3:30 and 4 a.m. He did not take anything into the store with him. At 5:42 a.m. they saw him leave the store, pushing a floor washing machine with a two-foot long brown box covered by a newspaper on top of it. Defendant parked the machine by a loading dock, took the box to the car, removed a package from the box and put the package in the car. Officer Hartley testified that he observed defendant's actions from the police van, that he saw the interior light of the car go on when defendant opened the door and that the package appeared to be store merchandise, but that he could not identify writing on the package or its contents. Defendant

placed the package behind the front seat on the passenger side and partially covered it with a pair of pants. After smoking a cigarette, defendant returned to the store, taking with him the washing machine, the brown box and the newspaper.

The officers immediately approached the car and saw the package through the window. They still could not identify its contents. They opened the door, seized the package and discovered that it contained diapers. The officer then called for police assistance and, when it arrived a few minutes later, they entered the store and arrested defendant without a warrant.

We allowed review to decide whether the warrantless entry of the car to retrieve the suspected stolen property was lawful as a search incident to arrest and whether the search of defendant's car was lawful either under the "automobile exception" to the warrant requirement as described in *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986), or, alternatively, under an individualized showing of exigent circumstances.

■ As to the first issue, the Court of Appeals reasoned that although the search preceded the formal arrest of defendant, the search was virtually contemporaneous with the arrest and therefore the fact that the search preceded the arrest was of no moment. But here the search was independent of the arrest. The officers searched the vehicle and, only after finding the stolen goods, elected to arrest defendant. There is no demonstration in this record that the police felt they had any reason to arrest defendant irrespective of what they found in the vehicle. The search did not flow from defendant's arrest nor was it an incident to his arrest. The Court of Appeals' reliance on *State v. Caraher,* 293 Or 471, 653 P2d 942 (1982), was misplaced.

■ As to the second issue, we emphasized in *State v. Brown, supra,* that we were not confronted with the search of a vehicle that was not mobile or that had not just been lawfully stopped by a police officer. We are now confronted with such a case. Although logically it can be argued that the rationale of the seminal case of *Carroll v. United States,* 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925), and its progeny, including *United States v. Ross,* 456 US 798, 102 S Ct 2157, 72 L Ed 2d 572 (1982), would justify extending the automobile exception to automobiles that are capable of mobility, we elect to draw the

so-called bright line of *Brown* just where we left it in that case: Searches of automobiles that have just been lawfully stopped by police may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence. In this case, we assume for the sake of argument that there was probable cause for the search of the automobile. We nevertheless hold that any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist. Here, the prosecution failed to demonstrate any individualized exigent circumstances.

As emphasized in *State v. Brown, supra,* and *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986), the police need clear guidelines for their actions. Citizens of this state also need to have their constitutional rights spelled out as clearly as possible. Forensic advocates can make a good case to draw the warrantless search line elsewhere and have in fact convinced the Supreme Court of the United States to extend the automobile exception to a stationary but operational vehicle in a public parking lot as being as readily mobile as one just stopped on a highway. *See California v. Carney,* 471 US 386, 105 S Ct 2066, 85 L Ed 2d 406 (1985). On the other hand, constitutional scholars, *see State v. Brown, supra,* 301 Or at 279 (Linde, J., dissenting); *State v. Bennett, supra,* 301 Or at 310 (Lent, J., dissenting), and other state courts interpreting their own constitutions, *see State v. Opperman,* 247 NW2d 673 (SD 1976); *State v. Ringer,* 100 Wash 2d 686, 674 P2d 1240 (1983), believe that there should be no automobile exception as such.

We choose not to stretch the automobile exception as far as the Supreme Court of the United States has done in interpreting the Fourth Amendment, nor do we retreat from the position taken in *State v. Brown, supra.* However, *Brown* sets the outer limit for warrantless automobile searches without other exigent circumstances. As Chief Justice Peterson observed in his concurring opinion in *State v. Bennett, supra,* 301 Or at 305-08, there are advantages in having a clear,

workable and consistent automobile exception, rather than one dependent upon a case-by-case showing of exigency. The case at bar again demonstrates that principle at work. The warrantless search violated Article I, section 9, of the Oregon Constitution.

Court of Appeals and circuit court reversed; case remanded to the circuit court to suppress the unlawfully seized evidence.