Argued and submitted April 24, reversed and remanded October 30, 1991

# STATE OF OREGON,
*Appellant,*

*v.*

# DAVID JORGENSON,
*Respondent.*

(CR0-0501; CA A65370)

819 P2d 742

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Louis R. Miles, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Sally L. Avera, Public Defender, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J., deceased.

## JOSEPH, C. J.

Defendant was charged with illegal possession of a deer. ORS 496.992. The state appeals from a trial court order allowing his motion to suppress. ORS 138.060(3). The issue is whether the warrantless search of his pickup was proper under Article I, section 9, of the Oregon Constitution.

At approximately 6:00 p.m. on February 10, 1989, Oregon State Police trooper Duggins, a fish and game officer, was patrolling snow-covered China Hat Road on U.S. Forest Service land in Deschutes County, driving an unmarked white pickup. A green Dodge pickup drove toward him at an excessive speed. Duggins stopped his pickup in the road. The other pickup continued toward him, swerved to avoid hitting him and momentarily entered a ditch on the side of the road. As it passed, Duggins saw Tony Partipilo driving and defendant as the passenger. He also saw what appeared to be a deer in the back of the pickup, along with logs and a tarp.

Duggins turned his pickup around and pursued,[1] but Partipilo eluded him. A few miles further on, Duggins saw Partipilo parked on a side road. Partipilo sped away, and Duggins again pursued. He came to a gate and stopped. He opened the gate, intending to continue the chase, but decided that it was futile. He found a notebook with Partipilo's name on it lying in the snow. He obtained Partipilo's address from the police dispatcher.

Duggins drove to the parking lot of Partipilo's apartment complex and waited. At approximately 9:30 p.m., Partipilo drove into the lot and pulled into a parking space. Duggins immediately drove his pickup in behind Partipilo's and blocked its exit. Partipilo got out of his pickup and met Duggins at its rear. Defendant parked his car on the street and joined them.

Duggins asked Partipilo and defendant why they had eluded him on China Hat Road. They admitted that they had been there but denied having known that he was a trooper. Duggins asked them where they had left the deer. They

---

[1] Duggins' pickup had no overhead lights and no insignias on the doors. He testified that, during the pursuit, he did not turn on any other lights, because the road wound through trees and Partipilo's pickup stayed too far in front of his.

denied having had a deer. Duggins then shined his flashlight into the bed of Partipilo's pickup to look for evidence of the deer. The bed had been freshly hosed out, the tarp had been removed and only one log remained. Duggins saw deer hairs. He seized them. He climbed into the pickup bed and rolled the log over. He found a pool of moist blood underneath. He also found blood and deer hairs on the log.

The court concluded that, when Duggins blocked Partipilo's pickup, he had stopped him. It also concluded that, at that time, Duggins had probable cause to believe that Partipilo had committed a crime. It found that no one consented to a search of the pickup and that the deer hairs were not in plain view. It concluded that Duggins had searched the pickup when he shined the flashlight into it and that that search was invalid, because no exigent circumstances existed.

Although defendant does not challenge the court's finding that Duggins had probable cause to search the pickup, he argues that there were no exigent circumstances that, given probable cause, could make the search valid. The state asserts that it was valid under the mobile vehicle exception to the warrant requirement. *See State v. Brown,* 301 Or 268, 274, 721 P2d 1357 (1986). In *State v. Kock,* 302 Or 29, 725 P2d 1285 (1986), the police, without a warrant, searched an unoccupied car parked in a shopping center parking lot. The car's owner, the defendant, was inside a store. The court ruled that the search was invalid:

> "Searches of automobiles that have just been lawfully stopped by police may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence. * * * [The] search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by warrant * * *." 302 Or at 33.

The exception does apply here. Duggins was investigating at least two possible crimes when he encountered Partipilo driving into the parking lot. *See State v. Vaughn,* 92 Or App 73, 77, 757 P2d 441, *rev den* 306 Or 661 (1988). The pickup was moving, mobile and occupied. At that moment, Duggins had probable cause to stop it and could search it. It is

inconsequential that Partipilo had pulled into a parking space, that his pickup may have ceased moving before Duggins blocked its exit or that Partipilo had got out of it as Duggins approached. Duggins did not, as defendant argues, relying on language in *State v. Kosta,* 304 Or 549, 555, 748 P2d 72 (1987), " 'weave together a web of information' [and] then rely on the automobile exception when the suspect conveniently enter[ed] a vehicle."

■    We also conclude that the scope of the search was reasonable. *State v. Brown, supra,* 301 Or at 279. The court erred when it allowed defendant's motion to suppress.

Reversed and remanded.