Argued and submitted August 28, reversed and remanded for new trial
December 30, 1992

# STATE OF OREGON,
*Respondent,*

*v.*

# DONALD EUGENE WARNER,
*Appellant.*

(90-1147; CA A71253)

844 P2d 272

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Paul Migchelbrink, Certified Law Student, Salem, argued the cause for respondent. With him on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

BUTTLER, P. J.

Rossman, J., dissenting.

## BUTTLER, P. J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992(4). He assigns error to the trial court's denial of his motion to suppress evidence obtained in a warrantless search of his pickup truck. We reverse.

On the morning of June 20, 1990, Detective Fenter, working undercover, informed Officer McCartney that, in his pickup, defendant might be carrying methamphetamine, substances used to manufacture methamphetamine and an escapee. From a long distance, McCartney first saw defendant's pickup travelling in the opposite direction at a very slow speed, less than 14 miles per hour. It moved onto the shoulder and, before McCartney passed by, it stopped, and defendant got out and opened the hood. After McCartney passed defendant, he made a U-turn and came up behind the pickup. He did not turn on his car's overhead lights.

Defendant lowered the hood and approached the driver's door. McCartney asked defendant if he needed help. Defendant did not respond. Instead, he got in the pickup and attempted to start it. It sputtered for less than "a couple of seconds" and died. Defendant continued trying to start it. McCartney testified that

> "other times it was more or less the starter pulling it over. It didn't sound to me at that point that there was any combustion, if you will.
>
> "Q   Okay. How many times afterwards did it die?
>
> "A   I don't really know. I know it was at least once more, maybe even twice more.
>
> "Q   Okay. But nothing fired that you heard?
>
> "A   No, sir, it didn't."

McCartney smelled the odor of methamphetamine coming from inside the pickup and saw a beer can on the floorboard. He asked to see the beer can; it was one-eighth full. He asked defendant if there were any others. Defendant got out of the cab and produced a brown paper bag of empty beer cans from the bed of the truck. At that time, McCartney detected the odor of methamphetamine coming from defendant and asked to see defendant's driver's license and the

vehicle registration. Defendant produced the driver's license, but did not have the registration with him. McCartney detected the same odor on the driver's license.

Officer Horner then arrived at the scene. McCartney requested, and was refused, consent to search the pickup. Horner saw a syringe on the console between the driver's and passenger's seats and told McCartney, who then also saw it. The officers then "moved [defendant] to the hood of the patrol car." The pickup was then searched, and controlled substances were found and seized. The record does not reflect where the officers searched or where the controlled substances were found.

Defendant moved to suppress the evidence seized in the search. In the trial court, the state relied only on the "automobile exception." *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986). The trial court agreed that that exception permitted the search and denied the motion to suppress. On appeal, although the state argues that the trial court was correct in applying the automobile exception, its primary argument is that the search may be justified as incident to defendant's arrest.

We first consider whether the warrantless search was justified under the automobile exception. "The warrant requirement * * * may be dispensed with in only a few specifically established and well-delineated circumstances." *State v. Brown, supra*, 301 Or at 273. *Brown* held that, "if police have probable cause to believe that a person's automobile, *which is mobile when stopped by police*, contains contraband or crime evidence," they may conduct a warrantless search of that car for those items. 301 Or at 276. (Emphasis supplied.) A car is "mobile" if it is lawfully stopped while moving. *See, e.g., State v. Kosta*, 304 Or 549, 748 P2d 72 (1987). Defendant's car was not stopped while moving.

If the car is not moving, nevertheless, it is considered to be "mobile" if it is occupied and operable when the police first encounter it. *State v. Kock*, 302 Or 29, 33, 725 P2d 1285 (1986); *State v. Cromwell*, 109 Or App 654, 659, 820 P2d 888 (1991). An "encounter" does not include observation from a distance. *State v. Walker*, 113 Or App 199, 204, 830 P2d 633,

*rev den* 314 Or 574 (1992). In *Cromwell*, although the defendant's pickup was parked when police encountered it, it was operable and the defendant was sitting in the driver's seat. We held that the automobile exception authorized the warrantless search of the pickup, because the police had probable cause to believe that it contained evidence of crime.

In this case, the trial court found that defendant's pickup was "sufficiently mobile (startable and movable) to allow the vehicle's immediate search at the time of the 'stop.' " The evidence, however, is that the pickup was crippled when McCartney first observed it and broke down shortly thereafter. Defendant tried to fix it, but the engine sputtered on the first attempt to re-start it and would not fire after that.[1] The evidence does not support the trial court's finding that the pickup was mobile at that time. *See Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). The search cannot be justified under the automobile exception.

On appeal, the state, for the first time, relies primarily on the search as being incident to defendant's arrest. Police may conduct a search, reasonable in time, space and intensity, incident to an arrest. *State v. Caraher*, 293 Or 741, 653 P2d 942 (1982). The state has the burden of proving the admissibility of evidence seized in a warrantless search. ORS 133.693(4).

Although defendant was not formally arrested at the scene, the officers had probable cause to arrest him for an open container violation, ORS 811.170, and for possession of methamphetamine. *State v. Quigley*, 100 Or App 418, 786 P2d 1274 (1990). A search incident to his arrest for violation of ORS 811.170 did not authorize a search for additional evidence of that offense. *State v. Porter*, 312 Or 112, 817 P2d 1306 (1991). However, a search for additional evidence of possession of methamphetamine was permissible *if* the search was incident to his arrest. Although the fact that the search preceded the arrest does not destroy its character as a search incident to arrest, *State v. Elk*, 249 Or 614, 439 P2d 1011 (1968); *State v. Green*, 67 Or App 70, 676 P2d 938, *rev*

---

[1] It is not clear whether the police report was admitted in evidence at the suppression hearing, although it was referred to by defendant's attorney. It was part of the record at the trial on stipulated facts. The report shows that the pickup was later towed from the scene by a police tow truck.

*den* 297 Or 82 (1984), the search must not be remote in time or space from the site of the arrest. *State v. Elk, supra,* 249 Or at 622. All that we know from the record is that defendant was not arrested at the scene. McCartney specifically stated that defendant "was not placed under arrest there that day." Accordingly, we conclude that the search and arrest were too remote in time and space to uphold it as incident to defendant's arrest.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

Although I agree with the majority that the search of the pickup cannot be sustained as incident to defendant's arrest, I will not follow the majority in its detour around the automobile exception. I must, therefore, dissent.

Too often, appellate courts are reluctant—or even unwilling—to accept that fact finding is a task best left to the "on the scene" trial judge. In fact, it is a task that we are *required* to leave to the trial judge. If there is evidence to support findings made by the trial judge, those findings cannot be disturbed on appeal. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). Here, the record shows that, only minutes before the stop, McCartney saw defendant driving the pickup on the highway, albeit very slowly, and that, when defendant attempted to restart the engine after it quit running, the engine did, in fact, start and run briefly before dying. On that evidence, the trial judge made the finding that the pickup was "startable and movable" at the time of the stop. That finding is supported by the evidence, and we are bound by it. *Ball v. Gladden, supra.*

The finding also supports the trial judge's conclusion that the pickup was "mobile" at the time of the stop. In interpreting the mobility requirement of the automobile exception, I urge that we be mindful that the principal rationale for the exception is to prevent evidence of criminal activity from being "quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Carroll v. United States,* 267 US 132, 153, 45 S Ct 280, 69 L Ed 543 (1925); *see State v. Brown,* 301 Or 268, 721 P2d 1357 (1986). The exception should permit a warrantless search if there is a

genuine threat[1] that the vehicle would, or could, be moved by the time a warrant could be secured. *See, e.g., State v. Cromwell, supra*, n 1.

Here, the trial judge found that the pickup was "startable and movable." There was, therefore, a genuine threat that defendant could have started his pickup and driven it away in the time it would have taken the officers to obtain a warrant. It "draws too fine a distinction," and strays from the purpose underlying the automobile exception, to say that the pickup was rendered "immobile" based on the mere fortuity that it did not start on the first few turns of the key. *State v. Cromwell, supra*, 109 Or App at 659.

---

[1] The cases cited by the majority and defendant in which the court held that the vehicle was "immobile" are inapposite. In those cases, there was no genuine threat that the vehicle would be driven away in the time that it would have taken the officers to get a warrant. *State v. Giffen*, 98 Or App 332, 778 P2d 1001 (1989), and *State v. Kock*, 302 Or 29, 725 P2d 1285 (1986), both held that the vehicle was "immobile," because it was parked and unoccupied when the officers first encountered it. Indeed, in *State v. Cromwell*, 109 Or App 654, 659, 820 P2d 888 (1991), which is cited by the majority, the court found that the vehicle was mobile, because there was a genuine threat that the "defendant could have driven it away at any moment."