Argued and submitted October 27, 1994, reversed and remanded June 28, petition for review denied October 24, 1995 (322 Or 228)

# STATE OF OREGON,
*Appellant,*

*v.*

# SHAWN GARY HOLLIDAY,
*Respondent.*

(10-92-06701; CA A80889)

898 P2d 812

Jonathan H. Fussner, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Ingrid A. MacFarlane, Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

## DEITS, P. J.

Defendant was charged with unlawful possession of a controlled substance. ORS 475.992(4). Defendant moved to suppress all evidence obtained from the search of his person or vehicle. The trial court granted the motion, and the state appeals. We reverse.

On April 10, 1993, Eugene Police Officer Smith stopped defendant's vehicle after observing the vehicle almost hit the curb and then turn into a parking lot without signaling. Smith testified that when he contacted the driver, he noticed that he was shaking and had beads of sweat on his forehead, and that his eyes were dilated and appeared watery. He also noted that defendant was sniffing a lot and rubbing his nose. Smith said that he asked defendant if he had been using drugs and that defendant told him that he was a past heroin user and was now on methadone. Smith also asked him where he was going. Defendant replied that he was coming back from the 66 Motel. Smith then asked defendant if there were any drugs in the car and if he could search the car. Defendant said that there were no drugs in the car, but that Smith could look. He also told Smith that there might be some syringes. When Smith looked in the car, he found two syringes that did not contain anything.

Smith also talked to the passenger in the car, Fields. He noticed that Fields also had dilated, watery eyes and that he had puncture wounds in his arms. Fields told Smith that they had gone to the 66 Motel to "score some cocaine," but that there was no one there. Following Smith's conversation with Fields, defendant told Smith that he did not want him to search anymore. Smith then searched defendant's person, without his consent. He found a small plastic bag of white powder in defendant's shirt pocket that field tested positive for cocaine. Smith then arrested defendant. He was charged with possession of a controlled substance.

Defendant moved to suppress the evidence obtained from the search of his person on the basis that the search was unlawful. The state argued that the search was permissible as a search incident to arrest. The trial court granted defendant's motion, stating, in part:

"5.   The Court finds that the police officer did not have probable cause to search, over the objection of the Defendant, the person and personal effects of the Defendant.

"6.   Officer Smith had probable cause to arrest the Defendant."

On appeal, the state argues that the trial court erred in granting the motion to suppress, because the search was lawful as a search incident to arrest. The state contends that at the time that Smith searched defendant's person and found the cocaine in his pocket, he had probable cause to arrest him for driving under the influence of intoxicants (DUII) and that, accordingly, the search of defendant was incident to arrest. Defendant argues that the search may not be justified on that basis, for two reasons: (1) at the time that he conducted the search of defendant, Smith lacked a subjective belief that he had been driving under the influence of intoxicants, and (2) defendant was never actually arrested for the DUII offense.

■     Under Article I, section 9, of the Oregon Constitution, there are two components to probable cause. An officer must subjectively believe that a crime has been committed, and that belief must be objectively reasonable under the circumstances. *State v. Nagel*, 320 Or 24, 880 P2d 451 (1994); *State v. Owens*, 302 Or 196, 729 P2d 524 (1986). Here, Smith testified that he had seen defendant driving and that after stopping defendant's vehicle and observing him, "I believed him to be under the influence of a controlled substance." Despite that evidence, defendant contends that the subjective component of probable cause was lacking here because the trial court disbelieved Smith's testimony. Defendant asserts that the court's finding on this point is a finding of historical fact and, therefore, it is binding on this court. *See State v. Stevens*, 311 Or 119, 806 P2d 92 (1991).

Although the trial court's colloquy with Smith certainly indicates that the court had concerns about Smith's motivation for the stop and his failure to arrest defendant for DUII,[1] the court did not make an explicit finding as to Smith's

---

[1] On cross-examination, Smith testified:

"Q. When you stopped [defendant and his passengers], would it be fair to say that you stopped them because you were going to cite them for failure to

credibility, nor did it expressly find that Smith lacked a subjective belief that defendant had driven under the influence of intoxicants. At the conclusion of argument, the court made the following statements on the record:

"THE COURT: You see, there is a cliche which I often thought was particularly applicable to proceedings in court. And that is, what you did speaks so loudly I can't hear what you are saying. Which simply means that the facts indicate that what you are telling may not be a hundred percent white and pure.

"You got the officer here who was, as far as we know, in his testimony he sees a fellow driving really close to the curb and making a turn into the ... is that still a topless joint?

"[DEFENSE COUNSEL]: I don't know.

"THE COURT: Into an ex-topless joint, without making a hand signal.

---

signal and maybe even some careless driving business because they came close to a curb, is that correct?

"A. That was a possibility, yes.

"THE COURT: Well, if that wasn't a possibility, what did you stop them for?

"THE WITNESS: He was asking if I was going to cite them. That's the reason I stopped them.

"THE COURT: There wasn't any other reason to stop them, except the way they were driving? You had no other reason to stop the vehicle, is that correct?

"THE WITNESS: That's correct."

The court then commenced its own questioning of Smith:

"THE COURT: * * * [D]id you believe at the time that you stopped [defendant] that he was under the influence of intoxicants, to-wit, drugs?

"A. After making contact with him, yes.

"Q. Did you cite him for driving under the influence of intoxicants?

"A. No, I did not.

"Q. Why didn't you?

"A. After the drugs were found from his shirt pocket, he was placed in custody and lodged on that charge.

"Q. Is that an excuse for not citing him for driving under the influence of intoxicants? Isn't that the reason that we have policemen out there to get people driving under the influence of intoxicants and boot them off the street so they don't run into us citizens?

"A. That's correct.

"Q. Why didn't you cite him for driving under the influence?

"A. I don't have an answer for you, Judge. He was taken off the street and lodged."

"Well, he examines the defendant. Based upon his experience and training, *he makes a determination that the driver of the automobile is under the influence of intoxicants, to-wit, drugs*.

"Now, does he give him a citation for making an unlawful turn without a hand signal? No.

"Does he give him a citation for driving under the influence of intoxicants? No.

"Does he ever arrest him for the crime of driving under the influence of intoxicants? No.

"But he gets up here, raises his right hand and says before God and this court, this man did commit the crime of driving under the influence of intoxicants.

"Why didn't you cite him for it? Well, he doesn't have any good explanation for not citing him for it. He mumbo-jumbos a little. Says well, he got him off the street.

"Now there used to be a time when I thought the law was that for an officer's safety you can make a search and make a damn thorough search. That's one thing I always thought that the officer was entitled to do.

"\* \* \* \* \*

"But somebody slipped that one up to Salem and said that's a bunch of horse shit, Allen. Quit makin' those silly rules. You can't.

"So I was trying to keep police from getting gunned down. If they don't give a damn in Salem, why should I worry about it.

"\* \* \* \* \*

"[T]hese cases where they say, well, we don't know whether he is under arrest or not, I guess somebody could have arrested him.

"They don't quite appeal to me, because I thought the law was supposed to be incident to an arrest.

"In this case I think based on the officer's testimony . . . *if his statement is true*, prior to ever making any search, he had the right to place the defendant under arrest for the crime of driving while under the influence of intoxicants.

"And if he would have placed him under arrest for driving under the influence of intoxicants, put him in the squad car and taken him to jail, they would have found the goddamn cocaine in an inventory search when they booked him.

"Did you know that, Officer? Did you ever think about that?" (Emphasis supplied.)

■■ Despite its concerns, the court ultimately concluded that "Officer Smith had probable cause to arrest the defendant."[2] Where the trial court has not made specific findings on all pertinent historical facts, and there is evidence from which those facts could be decided in more than one way, we presume that the court found facts in a manner consistent with its ultimate conclusion. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). Because the court concluded that Smith had probable cause to arrest defendant, it must ultimately have found that Smith subjectively believed that he had probable cause to make the arrest. That finding is supported by Smith's testimony, and we are bound by it on review. *See Nagel*, 320 Or at 32.

We further conclude, after considering the totality of the circumstances, that Smith's belief was objectively reasonable under the circumstances. Smith testified that, based on his experience and training, defendant's physical symptoms, such as his watery, dilated eyes and sniffing, were consistent with drug intoxication. Further, Smith's observations of defendant's erratic driving, defendant's admission that he was on methadone,[3] the passenger's admission that they had been on a drug run to a location that Smith knew was frequented by drug users, and the presence of syringes in the car, all support the conclusion that the officer's belief that defendant had been driving under the influence of intoxicants was objectively reasonable under the circumstances.

■ Defendant also argues that, because he was never actually arrested for DUII, the search cannot be justified as incident to an arrest for that offense. We disagree. As defendant acknowledges, the fact that a search precedes an arrest does not destroy its character as a search incident to arrest, as long as the search is not remote in time or space from the site of the arrest. *State v. Elk*, 249 Or 614, 439 P2d 1011 (1968); *State v. Warner*, 117 Or App 420, 844 P2d 272 (1992); *State v.*

---

[2] Because the arrest for possession of a controlled substance was not at issue at the hearing, we presume that the court was referring to probable cause to arrest defendant for the DUII offense. Defendant does not argue otherwise.

[3] Methadone is a Schedule II controlled substance. OAR 855-80-022(2)(n).

*Gordon*, 110 Or App 242, 821 P2d 442 (1991). Nonetheless, relying on *Warner*, defendant contends that a search incident to arrest is unlawful unless the person being searched is arrested for the specific offense that justified the search.

Defendant's reliance on *Warner* is misplaced. In that case, the police had probable cause to arrest the defendant for an open container violation and for possession of methamphetamine. 117 Or App at 424. Although the defendant was not placed under arrest, the police conducted a warrantless search of his vehicle. On defendant's appeal of his conviction for possession of a controlled substance, the state attempted to justify the search as incident to defendant's eventual arrest. The record, however, did not establish when or where the defendant was actually arrested, only that he was not arrested at the scene. On that basis, we concluded that the state failed to satisfy its burden of proving that the search and arrest were not too remote in time or space to uphold the search as incident to the arrest. *Id.* at 425.

Here, in contrast, it is undisputed that the search of defendant's person was "incident," in terms of time and space, to his arrest. The real issue, then, is whether Smith was required to arrest defendant for the offense that initially provided the justification for the search, or whether he could choose to arrest defendant only for the more serious charge.

We addressed a similar question in *Gordon*, 110 Or App at 242. In that case, the officer believed that the defendant had given him false information. Based on his experience in similar cases, the officer reached under the front seat of the defendant's car to see if the defendant's wallet was hidden there. Instead of finding a wallet, the officer found a loaded revolver and arrested the defendant for unlawful possession of a firearm. Notably, the defendant was never arrested for, or charged with, providing false information. We concluded that, under the totality of the circumstances, the officer had probable cause to arrest the defendant for providing false information to a police officer, and that, accordingly, the search of the car for evidence of identification was lawful as a search incident to arrest. *Id.* at 246.

Similarly, in this case, we do not believe that the officer's decision to arrest defendant only for the more serious

offense of possession of a controlled substance, and not for DUII, renders the search unlawful. It is a common occurrence that defendants are not charged on minor offenses when more serious charges arise. *See State v. Huss*, 23 Or App 118, 541 P2d 498, *rev den* (1975). Moreover, although an officer's failure to arrest a person for an alleged offense *might* be a relevant factor in determining whether the officer subjectively believed that there was probable cause to arrest, that issue is not before us here. As discussed above, the trial court's implicit finding is that Smith had such a subjective belief.

We thus conclude that because Smith had probable cause to arrest defendant for DUII, the search of defendant was a proper search incident to arrest.[4] The trial court erred in granting the motion to suppress.

Reversed and remanded.

---

[4] Defendant has not challenged the scope of the search, and we express no opinion on that issue.