Argued and submitted March 1, reversed and remanded August 23, petition for review denied November 21, 1995 (322 Or 360)

STATE OF OREGON,
*Appellant,*

*v.*

NOAH BURR,
*Respondent.*

(930258CR; CA A83869 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

CHRISTOPHER MICHAEL ALVAREZ,
*Respondent.*

(930259CR; CA A83870)

STATE OF OREGON,
*Appellant,*

*v.*

MATTHEW FRIES,
*Respondent.*

(930260CR; CA A83871)

STATE OF OREGON,
*Appellant,*

*v.*

MATTHEW ALAN VAN BERGEN,
*Respondent.*

(930261CR; CA A83872)

901 P2d 873

Timothy A. Sylwester, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Dan Maloney, Deputy Public Defender, argued the cause for respondents Noah Burr, Matthew Fries and Christopher Michael Alvarez. With him on the brief was Sally L. Avera, Public Defender.

Brian D. Aaron argued the cause and filed the brief for respondent Matthew Alan Van Bergen.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., dissenting.

## EDMONDS, J.

Defendants were each charged with one count of manufacture of a controlled substance and one count of possession of a controlled substance. ORS 475.992(1), (4)(a). Before trial, defendants moved to suppress evidence seized following a warrantless search of a pickup and the admissions obtained from defendants thereafter. The trial court granted defendants' motion, and the state appeals. ORS 138.060(3). The issue is whether the warrantless search violated defendants' constitutional rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. We reverse.

The trial court found:

"1)   On October 7, 1993, on highway 281 in Hood River County at approximately 9:50 p.m., Hood River Sheriff's Deputy Jim Tomson, while on patrol, observed a pickup truck parked on the east shoulder of the road. The truck's lights were off and it did not create a traffic hazard. The deputy was in his patrol car and in uniform. He pulled up, parked perpendicular to the pickup and got out to see if any assistance was needed. The four defendants were present in the area of the pickup and said that the vehicle had overheated. Shortly thereafter, they said they had been hunting. The deputy noted that the pickup did not appear to be hot, even though the defendants said they had just pulled up to this area. The deputy noted a deflated rubber raft located at the rear of the pickup. The individuals were placing the raft into the bed of the pickup.

"2)   It was dark at this time. The deputy noted there were no guns in or about the pickup. The defendants offered a third story to the deputy; they were looking the area over and had left their weapons at home in Gresham.

"3)   The deputy asked the individuals for identification and papers on the pickup. They produced identification and the deputy ran an ID check through the Hood River County Sheriff's dispatch.

"4)   Deputy Tomson was notified by dispatch that Noah Burr was wanted on a felony warrant for Menacing, Unlawful Use of Weapons, Delivery of a Controlled Substance and Tampering With a Witness and was told to use caution when dealing with Mr. Burr.

"5) Up to this point, the individuals were cooperative and friendly. The Deputy did not tell them they could not leave.

"6) Upon being informed by Dispatch of Mr. Burr's warrant, Deputy Tomson placed Mr. Burr under arrest and put him in the patrol car.

"7) With Deputy Tomson was Jason Ritock, an unarmed reserve officer who was not in uniform. After placing Mr. Burr in the patrol car, Deputy Tomson, standing at a distance from the remaining three individuals, asked them who owned the pickup. He was informed that the pickup belonged to Mr. Van Bergen's grandmother.

"8) Approximately five to eight minutes after the time Deputy Tomson was informed of Mr. Burr's outstanding warrant, Deputy Sheriff Paul Ufford arrived upon the scene.

"9) Deputy Tomson observed four Coors beers in the bed of the pickup that were partially covered by the rubber raft. Between the time that Mr. Burr was placed under arrest and Deputy Ufford arrived, Deputy Tomson discussed with the remaining defendants their various stories, and questioned them as to why they were really there. At no time prior to Deputy Ufford arriving did Deputy Tomson tell the defendants that they could not leave. There was some discussion about who would drive the pickup. Deputy Tomson was concerned about who was licensed to drive.

"10) When Deputy Ufford arrived, he had his overhead lights on and parked his vehicle parallel to Tomson's and perpendicular to the pickup. There was room for the pickup to leave; it was not blocked by either patrol vehicle. Upon Ufford's arrival, Tomson informed him of the three stories told by the remaining defendants. Deputy Ufford nodded and walked over to the three individuals by the pickup. Tomson was concerned about the status of the pickup in that neither the registered owner, nor the claimed owner was at the scene. When Ufford arrived at the scene, he noticed one of the individuals in the patrol car and the other three standing by the bed of the pickup. Tomson had not turned on his patrol car's overhead lights or siren, nor had he drawn his weapon. When Ufford arrived, he left his car's overhead lights on, but did not pull out his service revolver.

"11) Almost immediately upon getting out of his patrol car, Ufford smelled marijuana. Ufford testified credibly that he suffers severe allergic reactions when exposed to marijuana and after leaving the scene, he was unable to complete

his duty shift as a result of this exposure. At the time Ufford smelled the marijuana, he stated, "Where's the dope?" He walked around the far side of the pickup to check on the passenger side, opened the passenger door, looked on the floor board and didn't see anything.

"12) Deputy Ufford then moved to the rear of the pickup and the smell of marijuana grew stronger. He moved the raft covering the pickup bed and uncovered two ice chests. When he removed the raft, the marijuana smell was even stronger. He noted a marijuana leaf sticking out of one of the ice chests. He opened the ice chest and observed marijuana protruding from backpacks inside the chest. The ice chest in which the marijuana leaf was visible to the deputy contained two packs with marijuana leaves sticking outside of the bags. The bags were approximately 14 inches wide by eight inches deep and 14 inches high and were stuffed inside the ice chest. They were full of freshly cut marijuana."

We are bound by the trial court's express or implicit findings provided that they are supported by evidence in the record. In this case, they are. In its conclusions of law, the trial court said, "The vehicle was neither occupied nor mobile at the time Deputy Therman first observed it." Accordingly, our function is to decide whether the trial court erred when it concluded as a matter of law that the pickup was not "mobile." *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993).

The state argues that the application of the "auto-mobile exception" to the general prohibition against warrant-less searches was justified under the circumstances of this case. That exception provides that "if police have probable cause to believe that a person's automobile, which is mobile when stopped by police, contains contraband or crime evidence," they may conduct a warrantless search of the vehicle for those items. *State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986). Defendants argue that the automobile exception does not apply to the facts of this case because the pickup was parked and they were outside its cab at the time the officers encountered it.

A review of the case law is instructive in deciding this issue. In *Brown*, the defendant was stopped while he was driving his automobile. When the defendant declined to consent to a search of his automobile, the officers searched the passenger's compartment and the glove box for evidence that

would support the accusation that he was in possession of a weapon. The Supreme Court held:

"This case presents for us the heretofore unanswered question: Is there an 'automobile exception' to the warrant requirement of Article I, section 9, of the Oregon Constitution? We hold that there is such an exception, provided (1) that the automobile is mobile at the time it is stopped by police or other governmental authority, and (2) that probable cause exists for the search of the vehicle." 301 Or at 274.

The decision in *Brown* was followed by *State v. Kock*, 302 Or 29, 725 P2d 1285 (1986). In *Kock*, two police officers were watching the parking lot and entry area of a store where the defendant worked. The store manager had told the police before the surveillance that the defendant did not have permission to take merchandise from the store. The defendant customarily worked in the store between 4:00 and 6:30 a.m. The officers saw him come to work and enter the store between 3:30 and 4:00 a.m. He did not take anything into the store with him. At 5:42 a.m., they saw him leave the store with a box, which he took to his car. He removed a package from the box and put the package in the car. After smoking a cigarette, the defendant returned to the store, taking the box with him. When the defendant had left, the officers searched the car and seized the package.

The court held that the automobile exception did not apply. It said:

"[W]e elect to draw the so-called bright line of *Brown* just where we left it in that case: Searches of automobiles that have just been lawfully stopped by police may be searched without a warrant and without a demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or crime evidence. In this case, we assume, for the sake of argument, that there was probable cause for the search of the automobile. We nevertheless hold that any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist. Here, the prosecution failed to demonstrate any individualized exigent circumstances." 302 Or at 32-33.

In the light of *Brown* and *Kock*, we decided *State v. Cromwell*, 109 Or App 654, 820 P2d 888 (1991). In *Cromwell*, officers responded to a report of a prowler near a residence. They located the defendant's truck parked in the middle of the roadway, its engine not running and its parking lights on. The defendant and a companion were in the truck. Upon being contacted by the officers, the defendant voluntarily revealed marijuana that was located in separate containers under his jacket on the seat of the truck, and in his shirt pocket. We held that those facts provided probable cause to believe that other caches of marijuana would be found elsewhere in the truck. Subsequently, the officers searched the truck and seized methamphetamine in a container in the pocket of the jacket that was on the seat of the truck.

In analyzing whether the automobile exception permitted the warrantless search of the truck, we said:

> "The automobile exception does not apply to a vehicle that is parked, immobile and unoccupied when police encounter it, unless there are exigent circumstances in addition to the vehicle's 'potential mobility.' *State v. Kock*, 302 Or 29, 33, 725 P2d 1285 (1986). Defendant's truck was not unoccupied when the officers encountered it. Defendant and his companion were sitting in it, parked in the middle of a road, with the parking lights on. The truck was not actually in motion when police encountered it, but to say that it was 'immobile' draws too fine a distinction. The truck was 'mobile' in that defendant could have driven away at any moment. *The fact that defendant had not yet turned the key was merely fortuitous.* The search of defendant's truck was lawful, and the trial court correctly denied his motion to suppress." 109 Or App at 659 (citation and footnote omitted; emphasis supplied).

In *State v. Warner*, 117 Or App 420, 844 P2d 272 (1992), the defendant appealed his conviction for possession of a controlled substance and assigned error to the trial court's denial of his motion to suppress evidence obtained in a warrantless search of his pickup. The arresting officer had information that the defendant might be carrying methamphetamine. He first saw the defendant's pickup traveling in the opposite direction at a very slow speed. After the defendant's vehicle went by, the officer saw it move onto the shoulder and stop. The defendant got out and opened the

hood. The officer turned around and parked behind the pickup without turning on his overhead lights. The defendant lowered the hood and approached the driver's door. The officer asked the defendant if he needed help, but the defendant did not respond. Instead, he got in the pickup and attempted to start it. The pickup's engine sputtered and then died. Because the officer detected the odor of methamphetamine emitting from the defendant, he searched the vehicle. Subsequently, he seized controlled substances from it.

We reversed the trial court's application of the automobile exception rule to those facts. We said:

"If the car is not moving, *nevertheless, it is considered to be 'mobile' if it is occupied and operable when the police first encounter it.* * * * In *Cromwell*, although the defendant's pickup was parked when police encountered it, it was operable and the defendant was sitting in the driver's seat. We held that the automobile exception authorized a warrantless search of the pickup, because the police had probable cause to believe that it contained evidence of a crime.

"In this case, the trial court found that defendant's pickup was 'sufficiently mobile (startable and moveable) to allow the vehicle's immediate search at the time of the "stop." ' The evidence, however, is that the pickup was crippled when [the officer] first observed it and broke down shortly thereafter. Defendant tried to fix it, but the engine sputtered on the first attempt to re-start it and would not fire after that. The evidence does not support the trial court's finding that the pickup was mobile at that time. The search cannot be justified under the automobile exception." 117 Or App at 423-24 (citation and footnote omitted; emphasis supplied).

In the light of our interpretation in *Cromwell* and *Warner* of the meaning of the word "mobile," we turn to this case. Based on the facts that it found, the trial court concluded that the pickup was not "mobile" within the meaning of the automobile exception. It reasoned:

"The vehicle was parked and the occupants were outside the vehicle. Additionally, the deputy testified that the hood of the pickup was cold, indicating it had not been driven for some period of time. The automobile exception does not apply to the facts in this case."

■ The rationale underlying the automobile exception is to prevent evidence of criminal activity from being quickly moved out of the locality in which the warrant must be sought. *Brown*, 301 Or at 275. Here, defendants were observed loading a raft onto the pickup that was parked alongside a public highway. The fact that defendants were not in the cab of the vehicle is a mere fortuity. They need only have taken a few steps to have placed themselves in the vehicle in order to leave. In the light of the rationale for the rule, it would be a curious result to hold that the pickup was not mobile because defendants were standing outside the cab instead of sitting inside it when either circumstance would permit the driver to immediately drive off. In that sense, the pickup was "occupied and operable" when the police first encountered it. *Warner*, 117 Or App at 423.

The dissent believes that the facts of this case are indistinguishable from the facts in *Kock* and that our decision in *Cromwell* was wrongly decided. It would hold that the occupants would have to be inside the pickup and the engine running for the automobile exception to apply. In *Kock*, the defendant had left the locale of the automobile, which was parked in a parking lot adjacent to a store. When the police conducted their search, he was inside the store where he worked. Therefore, it was uncontroverted that his car was not occupied at the time of the search. Here, as in *Cromwell*, the vehicle was mobile because its occupants were in a position to operate it and leave in it immediately when the police first encountered it. Adopting the dissent's position would require us to retract our interpretation of what the word "mobile" means as expressed in *Warner* and in *Cromwell*.

Also, under the dissent's analysis, the officers would have been required to wait at the scene until defendants got into the vehicle and moved it before making a permissible stop and search. That analysis exalts form above substance because the probable cause to search existed as soon as the officer smelled the marijuana. It makes little sense to interpret the constitutions in a way that requires the officers to permit the vehicle to roll several feet before effecting the search. Under the circumstances of this case, the reason for the *per se* automobile exception exists whether the driver of

the vehicle is seated behind the steering wheel or is outside the car door.

In summary, we conclude that the trial court erred when it concluded as a matter of law that the automobile exception does not apply under these facts. The pickup was parked along a public highway at night in an isolated area, and defendants were loading a raft into it when Tomson arrived. The requirement of mobility was met because defendants could have driven away in the pickup at any moment. Inasmuch as the officers had probable cause to search as a result of the smell of marijuana emitting from a mobile vehicle, the exigency of otherwise losing evidence of criminal conduct because of the delay inherent in procuring a search warrant justified an immediate search.

Reversed and remanded.

**ARMSTRONG, J.,** dissenting.

In a series of cases in 1986, the Oregon Supreme Court established an automobile exception to the requirement in Article I, section 9, that the police must get a warrant to conduct a search. The exception was crafted to create a bright-line test for police officers to use to determine whether they can conduct a warrantless search of an automobile that they have probable cause to believe contains evidence of a crime. Simply stated, and with apologies to W.P. Kinsella, the author of *Shoeless Joe*, whose book became the film "Field of Dreams," the test is: "If you stop it, you can search." *See State v. Kock*, 302 Or 29, 32-34, 725 P2d 1285 (1986).

The majority is not satisfied with the Supreme Court's test and seeks to broaden it to cover the search of automobiles that have not been stopped by police officers.[1] It errs in doing so, and thereby creates uncertainty in an area of the law in which the Supreme Court has sought to remove it. Because the majority fails to follow Supreme Court precedent in this area, I respectfully dissent.

---

[1] To avoid confusion, it is important to make clear the meaning of the word "stop" in this context. It refers to the act of causing a moving vehicle to come to a stop. It is not equivalent to the stop of a person, which is a term of art that applies to police stops of people, and which applies without regard to whether the people who are stopped were going somewhere when stopped. *See* ORS 131.605-ORS 131.625.

The Supreme Court established an automobile exception to the state constitution's warrant requirement in *State v. Brown*, 301 Or 268, 721 P2d 1357 (1986). Before *Brown*, the police could search an automobile for evidence of a crime without first obtaining a warrant *if* (1) they had probable cause to believe the automobile contained such evidence *and* (2) exigent circumstances made it impracticable for them to obtain a warrant before conducting the search. 301 Or at 274. Whether exigent circumstances existed to justify the warrantless search of an automobile had to be evaluated by the police and by the courts on a case-by-case basis. *See id.* at 274-77.

In *Brown*, the court decided to adopt a " *'per se* exigency rule' " for certain automobile searches under Article I, section 9. The searches covered by the *per se* rule were identified to be those involving automobiles that have been lawfully stopped and that are mobile when stopped, assuming the existence of probable cause to conduct such a search. *Id.* For all other automobile searches, the police still had to establish the existence of exigent circumstances sufficient to justify a warrantless search, absent some other, recognized exception to the warrant requirement. *Cf. id.* (by implication).

The court in *Brown* left open the possibility that the *per se* exigency rule it had adopted might be expanded to cover situations in which the automobile had *not* been lawfully stopped at the time of the search:

> "We are not confronted in this case with the search of a vehicle that is not mobile and has not just been lawfully stopped by a police officer. We, therefore, do not address in this opinion whether a warrant for the search and seizure of a parked or impounded automobile is required."

*Id.* at 277.

Within three months of its decision in *Brown*, the court was required to address whether it would extend its *per se* exigency rule to cover vehicles that have *not* just been lawfully stopped, and the court rejected such an extension. *Kock*, 302 Or at 32-34. The search in *Kock* involved an automobile that an employee had parked in the parking lot of

his employer's store. Two police officers conducting surveillance at the lot watched the employee put into his car a package that he had taken from the store. The circumstances under which that occurred gave the officers probable cause to believe that the package contained stolen merchandise, and they conducted a warrantless search of the car to seize the merchandise after the employee had returned to the store. They then arrested the employee inside the store for theft.

The defendant moved to suppress the evidence seized in the search, and the Supreme Court held that the evidence had to be suppressed because the search was unlawful. In so doing, it rejected the state's argument that the search came within the *per se* exigency rule established in *Brown* for certain automobile searches. The court explained its decision as follows:

> "Although logically it can be argued that the rationale of the seminal case of *Carroll v. United States*, 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925), and its progeny * * * would justify extending the automobile exception to automobiles that are capable of mobility, we elect to draw the so-called bright line of *Brown* just where we left it in that case: * * * *[A]utomobiles that have just been lawfully stopped by police may be searched without a warrant and without demonstration of exigent circumstances when police have probable cause to believe that the automobile contains contraband or evidence of a crime.* In this case, we assume for the sake of argument that there was probable cause for the search of the automobile. We nevertheless hold that any search of an automobile that was *parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist.* Here, the prosecution failed to demonstrate any individualized exigent circumstances."

302 Or at 32-33 (emphasis supplied; citation omitted).

Here, the pickup had *not* just been lawfully stopped by the police, and it was parked, immobile and unoccupied at the time the police first encountered it. Given the discussion of the *per se* exigency rule in *Kock*, it is impossible to see how the search in this case can be upheld as coming within the

automobile exception to the state warrant requirement that the Supreme Court recognized in *Brown*.

The majority claims that our decision in *State v. Cromwell*, 109 Or App 654, 820 P2d 888 (1991), nevertheless provides authority by which to conclude that the search in this case comes within the state automobile exception. 136 Or App at 148-50. I disagree, because *Cromwell* is distinguishable from this case, and because *Cromwell* was wrongly decided and should be overruled.

In *Cromwell*, the pickup had been driven just before the police encountered it, it was parked in the middle of a dead-end road with its parking lights on and it was occupied. 109 Or App at 656, 659. The court reasoned that the pickup was mobile because the driver could have started the engine and driven the pickup away at any time. In other words, there was nothing to suggest that the pickup was immobile. In effect, then, the court distinguished *Cromwell* from *Kock* on the ground that the pickup in *Cromwell* was occupied and mobile, while the car in *Kock* was unoccupied and immobile.[2]

Here, the pickup was unoccupied and parked on the shoulder of a road when the police encountered it. The majority views the fact that it was unoccupied as a mere fortuity, however, because the defendants were near the truck and could have walked a few steps to get into it and driven it away. To the majority, then, the determinative issue is whether the truck was mobile, and it concludes that it was. The problem with that conclusion, however, is that the trial court concluded that the vehicle was *not* mobile.

There is evidence to support that conclusion. One of the officers testified that defendants had told him that the pickup had overheated. The court found that the engine was cold at the time the officers encountered the pickup, but the court did not reconcile the conflicting evidence about the amount of time the pickup had been parked on the shoulder. Furthermore, after Burr's arrest, the officers did not determine who had the keys to the pickup. They did determine,

---

[2] As I will explain, the distinction drawn in *Cromwell* between the facts in that case and those in *Kock* is of no moment, because the *per se* exigency rule established in *Brown* and confirmed in *Kock* requires the police to have lawfully stopped the vehicle in order for the automobile exception to apply.

however, that none of the remaining defendants had a valid driver's license with him. As a consequence, the officers were unable to verify that any of the defendants lawfully could drive the pickup away.

In summary, the pickup was parked and had not recently been moved when the officers encountered it. It is not known whether the pickup was operable, and the trial court did not find, implicitly or otherwise, that it was. Before the officers determined that they had probable cause to search the vehicle for evidence of a crime, they had tried but failed to establish that any of the defendants lawfully could drive the pickup away. On those facts, the trial court properly concluded that the pickup was immobile.

The pickup in *Cromwell* might have been mobile, because it had been driven just before the police encountered it, and it was parked in the middle of a road with the driver in it who could simply have turned the ignition and lawfully driven the pickup away. The contrasting facts of this case, in which the pickup was parked off a road, had not just been driven and was not known to be operable, and in which no one was in a position lawfully to drive it away, establish that the pickup was not mobile. Hence, whatever the validity of *Cromwell*, it is not authority for the search of the pickup in this case under the automobile exception to the state warrant requirement.

In any event, I believe that *Cromwell* was wrongly decided and cannot be reconciled with the Supreme Court's decisions in *Brown* and *Kock*. In *Kock*, the court explained that it was not willing to extend the automobile exception under the state constitution as far as the United States Supreme Court had done under the Fourth Amendment. In so doing, it expressly distinguished the state exception from the exception applied by the Supreme Court in *California v. Carney*, 471 US 386, 105 S Ct 2066, 85 L Ed 2d 406 (1985). *Kock*, 302 Or at 33.[3]

_____

[3] The court said in *Kock*:

"Forensic advocates can make a good case to draw the warrantless search line elsewhere and have in fact convinced the Supreme Court of the United States to extend the automobile exception to a stationary but operational vehicle in a public parking lot as being as readily mobile as one just stopped on a highway. *See California v. Carney*, 471 US 386, 105 S Ct 2066, 85 L Ed 2d 406 (1985). On

Significantly, the facts in *Carney* are legally indistinguishable from those in *Cromwell*. Hence, if the automobile exception that was applied in *Carney* goes beyond that recognized under the state constitution, and the *Kock* court said that it did, *see id.*, then the exception applied in *Cromwell* does too.

In *Carney*, police officers watched an adult approach a youth in downtown San Diego. The youth then went with the adult to a motorhome that was parked in a public parking lot. They went inside, pulled shades over all the windows and remained inside for about an hour and a quarter. The police spoke to the youth after he left the motorhome, and he told them that he had engaged in sexual activity with the adult in exchange for marijuana. The youth returned to the motorhome with the police and knocked on the door. In response to the knock, the adult opened the door and stepped outside. Without a search warrant or consent, the officers stepped into the motorhome to search it and found marijuana, plastic bags and a scale of the type used to weigh drugs. They then arrested the adult, who was later charged with possession of marijuana for sale. 471 US at 387-88.

The defendant sought to suppress the evidence obtained in the search, and the Supreme Court held that the search was valid under the automobile exception to the Fourth Amendment warrant requirement. *See id.* at 388-89, 394-95. It reasoned that a parked motorhome that was readily mobile "by the turn of an ignition key" came within the exception. *Id.* at 392-93. For that purpose, it considered the motorhome to be indistinguishable from an automobile. *See id.* at 392-94.

The facts in *Carney* are legally indistinguishable from those in *Cromwell*. Both involved parked, occupied

---

the other hand, constitutional scholars * * * and other state courts interpreting their own constitutions * * * believe that there should be no automobile exception as such.

"We choose not to stretch the automobile exception as far as the Supreme Court of the United States has done in interpreting the Fourth Amendment, nor do we retreat from the position taken in *State v. Brown, supra*. However, *Brown* sets the outer limit for warrantless automobile searches without other exigent circumstances."

302 Or at 33 (citations omitted).

vehicles that could have been driven away with the turn of an ignition key. The vehicle in *Carney* was parked in a parking lot and had not recently been moved, while the vehicle in *Cromwell* was parked in the middle of a dead-end road and had recently been moved, but those differences do not make the latter vehicle more mobile than the former.[4]

Because *Carney* and *Cromwell* involve equivalent facts, and the automobile exception recognized in *Carney* is inconsistent with that established in *Brown* and *Kock*, it follows that *Cromwell* misapplied the state automobile exception to the warrant requirement.[5] A further problem with *Cromwell* is that it blurred the bright line that the Supreme Court had established in *Brown* and *Kock* to distinguish between searches that are subject to the state automobile exception and those that are not.

The Supreme Court recognized in *Kock* that people could debate whether the bright line that it had established was the appropriate dividing line, given the rationale on which the automobile exception was based, but the court found value in the fact that the line it had chosen was clear:

"As emphasized in *State v. Brown, supra,* and *State v. Bennett,* 301 Or 299, 721 P2d 1375 (1986), the police need clear guidelines for their actions. Citizens of this state also need to have their constitutional rights spelled out as clearly as possible."

302 Or at 33. The court believed that the automobile exception that it had established met those goals. *See id.* at 33-34.

The bright line established in *Brown* and *Kock* distinguishes between (1) vehicles that are stopped by the police while moving and that could move again and (2) all other vehicles. There is no imprecision or ambiguity in the test. It requires no judgment by the police about the vehicles that are covered by it.

---

[4] *Cromwell* does not suggest otherwise. It found that the vehicle in that case was mobile because it was occupied and could have been driven away at any moment. 109 Or App at 659. So, too, the vehicle in *Carney.*

[5] Even if the facts in *Cromwell* somehow could be distinguished from those in *Carney,* the facts in this case certainly cannot be. Whatever the validity of *Cromwell,* the search in this case cannot be upheld under the state automobile exception without overruling *Kock,* which is not something that we are at liberty to do.

As formulated, the state exception covers most vehicles that the police have probable cause to search under circumstances in which it likely would be impracticable for them to obtain a warrant for the search. By limiting the exception to vehicles that are moving when stopped, the state exception also focuses on circumstances that more readily can be seen to be exigent. That is because a vehicle that is stopped short of its intended destination would almost certainly continue on once the police have released it, and it generally would be impracticable to obtain a warrant before that occurred.

Once the police start dealing with vehicles that have not just been stopped while moving, it is less certain that the vehicles will move before the police can obtain warrants to search them. Hence, it is less appropriate to apply a *per se* exigency rule to them.

Elimination of the requirement that the vehicle be moving when stopped by the police blurs the bright-line test that the Supreme Court sought to establish for the state exception. Instead of case-by-case judgments about exigency, which the Supreme Court sought to eliminate by creating a *per se* exigency rule, *see Kock*, 302 Or at 33-34, the police and courts must now make case-by-case judgments about likely mobility, in which likely mobility becomes a proxy for exigency.

Here, for example, the majority says that the vehicle was mobile because defendants were near it and could readily have gotten in it and driven it away. Would it reach the same result if defendants were standing 50 feet away from it, or 100 feet? What conclusion about mobility would the majority reach if the vehicle were parked at a parking meter on a city street and defendants were standing near it? Would the result be different if they were walking away from it, or if they were two blocks away but walking toward it? Would it be different if the pickup were parked in front of a house and defendants were standing near it?

The point is that the test applied in *Cromwell* and by the majority in this case has the same problem with case-by-case evaluation that the Supreme Court sought to eliminate by creating the state automobile exception in the first place,

with the added vice that it focuses on an issue that is one step removed from the ultimate issue that the test seeks to address, which is whether the police should be required to get a warrant in order to search a particular vehicle. If the police and courts are to apply an imprecise standard to decide whether it is constitutionally permissible to conduct a war-. rantless search of an automobile, the standard should focus on the relevant, ultimate issue, which is exigency, rather than on a substitute issue, such as likely mobility.

The majority argues that adherence to the *Brown* and *Kock* rule in this case would exalt form over substance, because it would require "the officers to permit the vehicle to roll several feet before effecting the search." 136 Or App at 149. The majority is wrong. The police *could* conduct a warrantless search of the pickup without waiting for it to move, but the state would have to establish that exigent circumstances made it impracticable for the police to obtain a warrant before conducting the search. *See, e.g., Kock*, 302 Or at 33. The state might have been able to make such a showing in this case, but it chose not to do so.[6]

The same argument made by the majority in this case could have been made in *Kock*. There the vehicle would almost certainly have been driven away within 30 minutes of the time the police first had probable cause to search it, because the defendant would have driven the car from work at that time at the conclusion of his shift. *See* 302 Or at 31. If it exalts form over substance to require the police to wait an indeterminate amount of time for the pickup in this case to move in order for the state automobile exception to apply, then the Supreme Court is subject to the same criticism in its application of the state exception in *Kock*.

Again, however, the state automobile exception recognized in *Brown* and *Kock* does not create the dilemma suggested by the majority. It only requires the police to focus on the existence of exigent circumstances before conducting a

---

[6] Of course, the same analysis applies to the search in *Cromwell*. Although the court erred in *Cromwell* in upholding the search under the state automobile exception, the search still might have been valid as a search conducted under exigent circumstances. *See Kock*, 302 Or at 33. For the search to be upheld on that basis, however, the state would have had to make an appropriate showing at the trial level to establish that it would have been impracticable to obtain a warrant for the search.

warrantless search of an automobile that is not covered by the exception. That presents no more problem for the police than existed before the state exception was recognized in 1986.

In summary, the majority errs in holding that the search of defendants' pickup comes within the automobile exception to the state warrant requirement. Because the state does not argue that any other exception to the warrant requirement applies, I must dissent from the majority's decision to reverse the trial court's order suppressing the evidence obtained as a result of the warrantless search of the pickup.